[No. A047385. First Dist., Div. Five. Jan. 30, 1991.]

LISA MOUNTS, Plaintiff and Appellant, v.
NEIL UYEDA, Defendant and Respondent.

COUNSEL

John A. Shepardson for Planitiff and Appellant.

Coddington, Hicks & Danforth and Richard G. Grotch for Defendant and Respondent.

OPINION

HANING, P. J.—Plaintiff/appellant Lisa Mounts appeals a summary judgment in favor of defendant/respondent Neil Uyeda in appellant's personal injury action. She contends the trial court erred in ruling her action was barred by the statute of limitations. We granted appellant's petition for rehearing to consider issues raised in part II.

FACTS AND PROCEDURAL BACKGROUND

On January 31, 1989, appellant filed her complaint against respondent for infliction of emotional distress, alleging that on January 30, 1988, she was driving on Highway 101 behind respondent, who negligently and/or intentionally waived or pointed a gun at her in a threatening manner, as a result of which she allegedly suffered severe emotional distress and resultant damages.

Respondent moved for summary judgment on the ground that appellant's complaint was not filed within one year of the incident, as required by Code of Civil Procedure section 340.

Appellant opposed the motion on the basis of Code of Civil Procedure section 351, which tolls the statute of limitations during the period the defendant is out of the state. Respondent admitted he had been absent from the state for four days in July 1988, but argued that Vehicle Code section 17463[1] exempts causes of action arising out of the operation of motor vehicles from the tolling provisions of Code of Civil Procedure section 351.

DISCUSSION

I

The rules for summary judgment are well established and require no exhaustive repetition. (See, e.g., *Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31]; 6 Witkin, Cal.

---

[1] Unless otherwise noted, all further statutory references are to the Vehicle Code.

Procedure (3d ed. 1985 pocket supp.) Proceedings Without Trial, § 274 et seq.) ■ When there is no factual dispute, our function is the same as the trial court: to determine whether the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■ Appellant concedes the one-year statute of limitations but contends that, pursuant to Code of Civil Procedure section 351, respondent's four-day absence from the state extended the filing time by four days until February 3, 1989, and thus her complaint filed on January 31 was timely. Code of Civil Procedure section 351 states: "If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action." ■ Accordingly, a defendant's absence from the state during the limitations period, even if he or she is amenable to substituted service, tolls the limitations period for the length of the absence. (*Dew* v. *Appleberry* (1979) 23 Cal.3d 630, 632 [153 Cal.Rptr. 219, 591 P.2d 509]; *Cardoso* v. *American Medical Systems, Inc.* (1986) 183 Cal.App.3d 994, 998 [228 Cal.Rptr. 627].) Consequently, barring any exceptions to Code of Civil Procedure section 351, appellant's complaint was timely filed.

■ Respondent argues that section 17463 establishes an exception in this case. It provides: "Notwithstanding any provisions of Section 351 of the Code of Civil Procedure to the contrary, when summons may be personally served upon a person as provided in Sections 17459 and 17460, the time of his absence from this State is part of the time limited for the commencement of the action described in those sections, except when he is out of this State and cannot be located through the exercise of reasonable diligence . . . ." Sections 17459 and 17460 provide that acceptance by a California resident of a certificate of ownership or registration, or a driver's license, constitutes consent by that person that personal service in an action arising out of the operation or ownership of a motor vehicle in California may be made within or without the state, regardless of a subsequent change of residency.[2]

The dispositive issue is whether appellant's cause of action arises out of respondent's operation of his automobile. Neither party has identified, nor have we located, any California cases in which sections 17459 and 17460

---

[2] Section 17459, in providing for service of process upon persons accepting certificates of ownership or registration, uses the phrase "a cause of action arising in this state out of the ownership or operation of the vehicle." Section 17460, providing for service on persons accepting or retaining driver's licenses, uses the phrase "a cause of action arising in this state out of his operation of a motor vehicle anywhere within this state." The reference to ownership refers primarily to vicarious liability, which is not an issue herein.

have been applied to circumstances other than traditional automobile accidents, in which there is no question that the injury was the direct result of operation of the vehicle. Although the broad legislative purpose of these statutes has been declared to be the protection of injured persons by assuring that potential defendants cannot avoid the state's jurisdiction (see *Abrams* v. *Stone* (1957) 154 Cal.App.2d 33, 41 [315 P.2d 453]), none of the cases involving sections 17459 or 17460 discuss the nexus between the injury and the operation of the vehicle.

To support their respective arguments concerning whether the injury alleged here arose out of the operation of a motor vehicle, both parties rely on cases such as *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123] and *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565 [140 Cal.Rptr. 828], in which the principal dispute was over insurance coverage. However, the coverage issue prevalent throughout such cases is not generally concerned with whether the plaintiff's injury arose out of the "operation" of a vehicle, but instead focuses on the scope of the liability insurance coverage mandated by statute for vehicular "use." ■ Both Insurance Code section 11580.1 and Vehicle Code section 16451 require California automobile liability policies to cover the insured and any permissive users against loss from the liability imposed by law for damages arising out of "ownership, maintenance or *use*" of the insured vehicle. But the Legislature has distinguished between the terms "use" and "operation" or their derivatives, as those terms in the Vehicle Code are applied to motor vehicles. Although the operation of a motor vehicle clearly involves its use, a vehicle may be in "use" for purposes of the liability insurance required by section 16451 without actually being in "operation." (*Glens Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774, 782 [51 Cal.Rptr. 789].)

In *Glens Falls* a trucking company employee drove to a supplier to pick up a load of concrete beams. He loaded the beams with the assistance of the supplier's employee, who was driving the supplier's forklift. The trucker was injured when struck on the head by a steel hook suspended from the forklift over the bed of the truck. At the time of the injury the trucking company was an authorized self-insurer under section 16055. The liability carrier for the supplier sought declaratory relief to establish that the forklift driver was a permissive user of the trucking company's truck, and thereby covered by the trucking company's "self-insurance." The supplier's carrier based its contention on the fact that loading and unloading is considered to be "use" of a vehicle under section 16451.

*Glens Falls* observed that although section 16451 "reflects a legislative purpose of broadening insurance coverage so as to protect those injured by

the negligence of any person using the motor vehicle with the owner's consent" (*Glens Falls Ins. Co.* v. *Consolidated Freightways, supra*, 242 Cal.App.2d at p. 782), it does not create any independent legal liability for the negligent operation of a motor vehicle. It "merely prescribes the necessary terms and provisions of an insurance policy furnished as proof of ability to respond in damages and thus constituting one of the several methods of establishing exemption from the requirement of depositing security to satisfy any final judgment or judgments for bodily injury or property damage (§ 16057)." (*Ibid.*) On the other hand, the term "use" in section 16451 must be given broad and comprehensive meaning to effect the state's purpose of affording protection to " 'that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' [Citations.]" (*Ibid.*) Consequently, acts encompassed by the "use" mandate of section 16451 are not necessarily those arising out of or related to the "operation" of a vehicle, but can involve conduct in which the motor vehicle itself does not play any part, such as loading and unloading. (*Id.*, at p. 783.) "Use" is not limited to the operational activity of the motor vehicle. (*Id.*, at p. 784.)

However, the only method of proof of financial responsibility required by the Financial Responsibility Act (FRA) (§ 16000 et seq.) to which "use" pertains is an automobile liability insurance policy. The Vehicle Code does not require that the other methods of proof of financial responsibility, including certificates of self-insurance, incorporate or embrace the provisions required of insurance policies under section 16451. *Glen Falls* thus concluded that no liability or responsibility for the forklift driver's negligence could be imposed upon the trucking company by virtue of section 16451. "Any liability of [the trucking company] for [the forklift driver's] acts must be that based on section 17150 because of the negligence of [the forklift driver] in the *operation* of the truck. . . . [L]oading activities such as those engaged in by [the forklift driver do not] constitute an *operation* of the truck . . . . Nor do we think such a claim could be made under the instant facts. Loading a truck is not operating it, as any teamster knows." (*Glens Falls Ins. Co.* v. *Consolidated Freightways, supra*, 242 Cal.App.2d at p. 786.)

A review of the relevant portions of the Vehicle Code illustrates the correctness of *Glen Falls*'s conclusion that the Legislature intended to distinguish between "use" and "operation." Within the FRA, section 16451 is the only statute to employ the term "use" in reference to motor vehicles. Section 16451 regulates insurance companies, and reflects the state's policy that insurance companies conducting business in California must provide broad and comprehensive coverage. (*Glens Falls Ins. Co.* v. *Consolidated Freightways, supra*, 242 Cal.App.2d at pp. 782-783.) The remaining statutes

in the FRA regulate vehicle owners and operators, and establish procedures to be followed after personal injury or property damage arises out of the "operation" of a motor vehicle. For example, accident reports are required from drivers "involved in an accident originating from the *operation* of a motor vehicle . . . ." (§ 16000, italics added.) Penalties are imposed only for conduct arising from the *operation* of a motor vehicle. (See, e.g., § 16004 [license suspension for failure to report accident]; § 16070 [license suspension for failure to deposit security following an accident]; § 16370 [license suspension for failure to satisfy judgment arising from motor vehicle operation].)

Sections 17459 and 17460 are contained in chapter one of division 9 of the Vehicle Code (§ 17000 et seq.) governing civil liability of owners and operators of motor vehicles, and which imposes vicarious liability on both public (§ 17001) and private (§ 17150) owners of motor vehicles for injuries resulting from negligent or wrongful acts or omissions "in the operation of" motor vehicles. In construing the predecessor to section 17001 (former Civ. Code, § 1714½) the Supreme Court held that "it was the intention of the legislature to use the word 'operation' in its popular and ordinary sense as applied to motor vehicles. That is, to be in operation, the vehicle must be in a 'state of being at work' or 'in the active exercise of some specific function' by performing work or producing effects at the time and place the injury is inflicted." (*Chilcote* v. *San Bernardino County* (1933) 218 Cal. 444, 445 [23 P.2d 748]; *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 657 [161 Cal.Rptr. 140]; *Bright* v. *East Side Mosquito etc. Dist.* (1959) 168 Cal.App.2d 7, 13-14 [335 P.2d 527]; *Marshall* v. *County of Los Angeles* (1955) 131 Cal.App.2d 812, 814 [281 P.2d 544].)

Because the term "operation" has not been otherwise defined by the Legislature since *Chilcote* and cognate cases despite subsequent amendments to the Vehicle Code, and is used consistently throughout the statutes governing liability (§ 17000 et seq.) and financial responsibility (§ 16000 et seq.), we give it the same interpretation wherever it appears in statutes dealing with the same subject matter. (See *Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 359 [185 Cal.Rptr. 453, 650 P.2d 328]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Given the fact that most of the financial responsibility and liability statutes have been amended since the *Glens Falls* decision, we also presume the Legislature was aware of the distinction made in that case, and deliberately intended it to continue. (See *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) Thus, as stated earlier, we focus on the "operational" concept which, in turn, develops on a case-by-case basis.

██ Even where the broad scope of "use" is employed for insurance coverage purposes, some link between the vehicle and the injury must be established. "The California cases uniformly hold that the 'use' of an automobile need not amount to a 'proximate cause' of the accident for [automobile liability insurance] coverage to follow. [Citations.] *Some minimal causal connection between the vehicle and an accident is, however, required.* 'Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use.' [Citations.]" (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 100, fn. 7, italics added; see also *Aetna Casualty & Surety Co.* v. *Safeco Ins. Co.* (1980) 103 Cal.App.3d 694, 697-701 [163 Cal.Rptr. 219].) *Partridge* and *Aetna,* both of which involved firearm accidents that occurred in automobiles, cited other cases where shooting accidents occurred in both moving and stationary vehicles, but where it was held there was insufficient causal connection between the use or operation of the vehicle and the discharge of the firearm to constitute "use," even for coverage purposes.

Certainly no less is required when a plaintiff is claiming that an injury arose out of the operation of a motor vehicle; a causal connection between the operation of the vehicle and the injury must be established. The California cases involving "operation" confirm this. In *Chilcote* v. *San Bernardino County, supra,* 218 Cal. 444 the plaintiff's son was killed when his car skidded out of control on a freshly oiled highway. The oil was alleged to have been negligently spread by county vehicles, but the Supreme Court ruled that the accident was caused by the condition of the highway and not the operation of a motor vehicle.

In *Greenberg* v. *County of Los Angles* (1952) 113 Cal.App.2d 389 [248 P.2d 74] the court ruled that the conduct of county ambulance drivers who ignored medical instructions to the contrary and delayed transportation of a patient to the county hospital, thereby causing the patient's death, did not involve the negligent operation of a motor vehicle.

In *Marshall* v. *County of Los Angeles, supra,* 131 Cal.App.2d 812 the negligent operation of the tilting bed of a dump truck was determined to constitute operation of the vehicle, even though the truck was parked at the time.

In *Bright* v. *East Side Mosquito etc. Dist., supra,* 168 Cal.App.2d 7 a public vehicle engaged in spraying for mosquitos emitted a chemical fog which blew onto and obscured an adjacent highway, resulting in accidents caused by reduced visibility. The court determined that this constituted operation of a motor vehicle.

In *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d 648 police officers placed a person arrested for driving under the influence into their patrol car, unrestrained, with the motor running. When the police left him unattended he sped off in the patrol car and subsequently ran off the road and struck the plaintiff. The court concluded that "[o]ne function of a police vehicle is to transport arrested persons to jail. Here the arrested man had been placed in the rear of the car. Its motor was apparently running, which suggests that the officer was about to transport [the arrestee] when he was interrupted by his colleague's difficulty with [the arrestee's] car. Under the circumstances, we conclude that the car was 'in a state of being at work' and therefore in operation within the meaning of [section 17001]." (*Id.,* at p. 658.)

Thus, it appears that not every tort occurring within a motor vehicle is necessarily related to its operation. For example, a driver who utters a slanderous remark concerning a passenger in a crowded vehicle, or who uses a telephone in the vehicle to make a harassing phone call, may well cause emotional distress to the victim, but neither act can be characterized as arising out of the operation of the vehicle.

In the instant case there was no contact between respondent's vehicle and appellant or her vehicle; there is no contention that respondent's vehicle was moving in an erratic or unlawful manner; there is no suggestion that respondent was driving under the influence of alcohol or drugs; and there is no contention that respondent violated the Vehicle Code in any other fashion. (From facts in the record which are not relevant to any issue before us, we infer that respondent was licensed to carry a concealed firearm, so his mere possession of the weapon in his vehicle was not violative of Penal Code sections 12025 or 12031.) Appellant's conduct does not subject him to the reporting or security requirements of the FRA (§ 16000 et seq.), nor to the obligations imposed under division 10 of the Vehicle Code (§ 20000 et seq.) concerning vehicular accidents.

In summary, the conduct attributed to respondent is independent of and unrelated to the operation of his vehicle. As a consequence, appellant's injury did not arise out of the operation of a motor vehicle, and her complaint was timely filed. No issue of vehicular "use" or insurance coverage is before us, and we do not express or imply any opinion thereon.

## II

We granted respondent's petition for rehearing to consider the constitutionality of Code of Civil Procedure section 351. ■ Although this issue

was not raised in the trial court or the initial appeal and we do not ordinarily consider such points on rehearing, we may do so for good cause, and the validity of the dispositive statute constitutes good cause. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 684.) The fact that respondent had not presented this issue earlier is understandable. Respondent relies primarily on a federal case, *Abramson v. Brownstein* (9th Cir. 1990) 897 F.2d 389 which was decided February 21, 1990, but did not appear in Shepard's California Citations until approximately the date we filed our original opinion.

In *Abramson*, the plaintiff, a California resident, agreed by telephone in June 1981 to purchase merchandise from defendant, a Massachusetts resident. Plaintiff paid, but defendant did not fulfill his part of the contract. In July 1987 plaintiff filed a complaint containing causes of action for breach of contract and various torts against defendant, now a New York resident, in federal district court in California. The action was dismissed on statute of limitations grounds. The Ninth Circuit found that the tolling provision of Code of Civil Procedure section 351 applied to the complaint because defendant had never been physically present in California. (*Abramson v. Brownstein, supra*, 897 F.2d at at p. 391.) However, relying on *Bendix Autolite Corp.* v. *Midwesco Enterprises* (1988) 486 U.S. 888 [100 L.Ed.2d 896, 108 S.Ct. 2218], it concluded Code of Civil Procedure section 351 was unconstitutional under the federal commerce clause. *Bendix* held that where "a [s]tate denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is . . . an impermissible burden on commerce." (*Id.*, at p. 893 [100 L.Ed.2d at p. 903].) Balancing California's putative interests against the interstate restraints, *Abramson* held that Code of Civil Procedure section 351 imposes a significant burden by forcing "a nonresident individual engaged in interstate commerce to choose between being present in California for several years or forfeiture of the limitations defense, remaining subject to suit in California in perpetuity" (897 F.2d at p. 392) which burden is not overcome by California's interest in " 'rationally alleviat[ing] any hardship that would result by compelling plaintiff to pursue defendant out of state [even if defendant is amenable to service of process].' [Citation.] [¶] . . . The California tolling statute is therefore unconstitutional." (*Id.*, at p. 393.)

*Abramson* does not declare Code of Civil Procedure section 351 facially unconstitutional. "On its face, California's tolling statute is non-discriminating because it treats alike residents and nonresidents of California." (*Abramson* v. *Brownstein, supra*, 897 F.2d at p. 392.) ■ A statute is invalid on its face and wholly void only when incapable of any valid application. (*Thornhill* v. *Alabama* (1940) 310 U.S. 88, 101-106 [84 L.Ed. 1093,

1101-1105, 60 S.Ct. 736].) In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. (*County of Sonoma* v. *State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 368 [220 Cal.Rptr. 114, 708 P.2d 693].) A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215].) The corollary to the challenger's burden is that if the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail. (*People* v. *Harris* (1985) 165 Cal.App.3d 1246, 1255-1256 [212 Cal.Rptr. 216].) A statute is not facially unconstitutional simply because it may not be constitutionally applied to some persons or circumstances; at a minimum its unlawful application must be substantial and real when judged in relation to the statute's plainly legitimate sweep. Unless it is in total conflict with the Constitution, any overbreadth is cured by a case-by-case analysis of the particular fact situation. (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 48-49 [231 Cal.Rptr. 757].) A statute will be declared invalid in its entirety only when its scope cannot be limited to constitutionally applicable situations except by reading in numerous qualifications and exceptions, i.e., rewriting it, or if it is invalid in certain situations and cannot be enforced in others without danger of an uncertain or vague future application. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

In both *Abramson* and *Bendix*, state tolling statutes ran afoul of the commerce clause because the defendants were nonresidents who caused the breach and/or injury in conjunction with their involvement in interstate commerce with local residents. As *Bendix* enunciated, it is under that particular confluence of facts that the statute's constitutionality must be analyzed. (*Bendix Autolite Corp.* v. *Midwesco Enterprises, supra,* 486 U.S. at p. 893 [100 L.Ed.2d at pp. 903-904].) ■ In the instant case, both parties are local residents, and the alleged injury did not involve interstate commerce. Under such circumstances there is no interaction between Code of Civil Procedure section 351 and the commerce clause, and hence no conflict between them. Absent such a conflict, there is no constitutional infirmity to the application of Code of Civil Procedure section 351 here.

The summary judgment is reversed.

Low, P. J., and King, J., concurred.