[No. D014811. Fourth Dist., Div. One. Sept. 22, 1992.]

KENNETH CLARE, Plaintiff and Appellant, v.
STATE BOARD OF ACCOUNTANCY, Defendant and Respondent.

**COUNSEL**

Coughlan, Semmer & Lipman, R. J. Coughlan, Jr., and Kim Ornelas for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Susan A. Lanoue, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**WORK, Acting P. J.**—Kenneth Clare appeals a judgment denying his petition for a writ of mandate challenging the suspension of his accountant's

license by the California State Board of Accountancy (CSBA), alleging the CSBA erred by suspending Clare's state license under Business and Professions Code[1] section 5100, subdivision (g),[2] solely because he had been earlier suspended by the Federal Home Loan Bank Board (FHLBB). We reject Claire's various constitutional challenges to subdivision (g) and his evidentiary arguments, and find substantial evidence supports the judgment. Accordingly, we affirm the trial court's judgment denying Claire's petition for a writ of mandate.

I

During 1983 and 1984, Clare was the audit partner of Arthur Young and Company in charge of the independent audit of Sun Savings and Loan (Sun). During that period, Daniel Dierdorff was Sun's president and chief executive officer. In late 1983, Dierdorff observed Clare filling out a "football pool" sheet for placing bets with Clare's acquaintance, Andy Cylke. Dierdorff asked to participate in the "pool," Clare agreed to serve as Dierdorff's conduit in placing bets with Cylke, and did so from time to time. When Dierdorff won, Cylke would deliver a check made payable to Clare. Clare would deposit the check in his account and deliver a check to Dierdorff drawn upon his account. When Dierdorff lost, Dierdorff would give Clare a cashier's check drawn upon a savings account, and Clare would deposit the check into his account and then pay Cylke with a check drawn upon his account. In particular, Dierdorff gave Clare a check dated December 16, 1983, for $1,300 representing losses over two to three weeks and also a check dated December 29, 1983, for $700.

In the course of his audit, Clare learned Dierdorff had a secret savings account with Sun under the fictitious name "Daniel Danzer" with about $150,000 in it. When Clare confronted Dierdorff, Dierdorff told him it was his "funny money" account he was concealing from his wife. This account was the one from which Dierdorff's two December 1983 betting loss checks were drawn. Clare informed partners at Arthur Young and also Sun's in-house and outside counsel of the existence of the Danzer account, and asked Dierdorff to produce documentation supporting deposits to and withdrawals from the account. However, Dierdorff repeatedly delayed providing such documentation to Clare on about 12 occasions, typically explaining he was "too busy." In part due to Clare's acquiescence in Dierdorff's delays, Sun's board of directors did not learn of the Danzer account until four or five

---

[1]All statutory references are to the Business and Professions Code unless otherwise specified.

[2]When referring to section 5100, subdivision (g), we will refer to it only as subdivision (g) throughout the remainder of this opinion.

months after Clare discovered its existence. Dierdorff was terminated soon thereafter by Sun's board of directors.

In 1986, the FHLBB notified Clare it intended to institute disciplinary action (Notice) because of improprieties perceived in his audit performance at Sun. At the same time, apparently the result of prior negotiations, Clare and the FHLBB entered into a stipulation and consent to entry of a disciplinary order prohibiting Clare from performing accounting services for a period of seven years for any financial institutions having savings accounts insured by the Federal Savings and Loan Insurance Corporation (FSLIC) or participating in preparing any financial statement or report to be filed with or submitted to the FHLBB.

The Notice alleges Clare had engaged in "improper professional conduct and/or has willfully violated provisions" of FHLBB-administered laws or rules. It also described the actions of Clare as a conduit for Dierdorff's betting activities, as well as Clare's discovery of the Danzer account in March 1984, but subsequent delay resulting in Sun's board of directors not learning of the Danzer account until August 1984. However, Clare specifically denied the allegations of misconduct contained in the Notice. By stipulating to accept a seven-year suspension from accounting/audit practice for FSLIC insured financial institutions, Clare avoided having the FHLBB examiner make specific findings on the misconduct allegations.

On December 13, 1988, the CSBA filed an accusation seeking to suspend or revoke Clare's license to practice accountancy in California pursuant to section 5100 which permits such action for "unprofessional conduct," including, in subdivision (g) the "[s]uspension or revocation of the right to practice before any governmental body or agency." A hearing was held before an administrative law judge (ALJ), and the CSBA relied solely upon the fact that Clare's right to practice before the FHLBB had been suspended by the disciplinary order. In defense, Clare testified in mitigation of the charges, but was not permitted to relitigate the facts upon which the disciplinary order was founded. Clare also presented the testimony of other witnesses. The cumulative testimony was essentially undisputed as to the conduct of Clare with respect to the placing of Dierdorff's bets and acquiescence in the delay in informing Sun's board of of directors of the Danzer account.

In a proposed decision, the ALJ made specific findings of fact as to Clare's conduct and concluded Clare's conduct triggering the FHLBB suspension was "substantially related" to the qualifications, functions, or duties of the accounting profession. The CBSA adopted the ALJ's proposal Clare's

accounting license be revoked, but revocation stayed for two years upon the conditions Clare's license be suspended for ninety days, he complete certain professional education courses, and obey all laws and all California rules governing the practice of accounting.

Clare's petition to the trial court for a writ of mandate to set aside the CSBA's decision was denied. The court held subdivision (g) was constitutional as applied, and implicitly found a substantial relationship between the conduct underlying the FHLBB suspension and Clare's fitness to practice accounting.

## II

We begin our analysis by reviewing the appropriate standards of review at the trial court level and on appeal. ▇ As the court recently stated in *Vaill* v. *Edmonds* (1991) 4 Cal.App.4th 247, 257 [6 Cal.Rptr.2d 1]:

"The right to practice one's profession is a fundamental vested right and if a person's license to practice that profession is revoked by an administrative agency, when a petition for a writ of mandate is brought for restoration of the license, the trial court must apply its independent judgment to its review of the facts underlying the administrative decision."

In applying the independent judgment rule, the trial court weighs the evidence and makes its own determination whether the CSBA's decision should be upheld. (*Vaill* v. *Edmunds, supra,* 4 Cal.App.4th at p. 258.) The trial court in this matter properly applied the independent judgment test. On appeal, we decide whether the trial court's findings are supported by substantial evidence. (*Ibid.*) We do not apply our own independent judgment as to the facts in evidence, although we, of course, reserve the ability to independently decide issues of law. Applying the substantial evidence rule, we resolve conflicts in the evidence in favor of the trial court's findings, and we accept the inferences of the trial court where alternative inferences are reasonably possible. (*Ibid.*)

Under California law, an accountant's license to practice may be revoked or suspended for "unprofessional conduct." Section 5100 states in pertinent part:

"After notice and hearing the *board may revoke, suspend* or refuse to renew *any permit or certificate* [to practice accounting], . . . or may censure the holder of that permit or certificate *for unprofessional conduct which includes,* but is not limited to, one or any combination of the following causes:

"(a) Conviction of any crime substantially related to the qualifications, functions and duties of a certified public accountant or a public accountant.

". . . . . . . . . . . . . ◦ . . . . . . . . .

"(d) Cancellation, revocation or suspension of a certificate, other authority to practice or refusal to renew the certificate or other authority to practice as a certified public accountant or a public accountant, or any other discipline by any other state or foreign country.

". . . . . . . . . . . . . . . . . . . . . .

"(g) *Suspension or revocation of the right to practice before any governmental body or agency.*" (Italics added.) The provisions of subdivision (g) have been included in section 5100 since its enactment in 1945. However, neither party has cited any cases interpreting this subdivision, nor were we able to locate any such cases. Accordingly, our interpretation of subdivision (g) appears to be one of first impression.

## III

Clare argues his suspension is invalid because subdivision (g) facially permits such discipline without regard to whether the federal suspension was related to his qualifications, functions, or duties as a certified public accountant. However, for the following reasons, we conclude a reasonable interpretation of subdivision (g) includes a requirement that a licensee's prior suspension be "substantially related" to conduct pertaining to qualifications, functions, or duties as an accountant to justify discipline under section 5100. We further conclude substantial evidence supports the court's and the CSBA's findings that Clare's conduct underlying the FHLBB suspension is substantially related to those qualifications, functions, or duties. We recognize the language of subdivision (g) does not expressly include such a requirement, however, such a requirement is found in case law, related statutes, and apparent legislative intent.

■ Subdivision (g) is one of several types of "unprofessional conduct" which may be a basis for discipline under section 5100. As our Supreme Court stated in *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 227 [82 Cal.Rptr. 175, 461 P.2d 375], the meaning of "unprofessional" must "depend upon, and thus relate to, the occupation involved." The *Morrison* opinion also rejected a lower court's suggestion that "no rational connection

need be shown between the improper conduct and fitness for the profession involved . . . ." (*Id.* at p. 235, fn. 4, disapproving *Saunders* v. *City of Los Angeles* (1969) 273 Cal.App.2d 407 [78 Cal.Rptr. 236].) Since the *Morrison* decision, the Supreme Court has consistently held California cannot revoke the license of a professional unless his or her conduct relates to fitness or competence to practice that profession. In *Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 767 [129 Cal.Rptr. 462, 548 P.2d 1134], the court stated: "The state's power to regulate a profession cannot be used arbitrarily to penalize conduct having no demonstrable bearing upon fitness for its practice." The court noted the requirement of such a relation is constitutionally mandated, stating:

"[W]e observe that numerous decisions have established that a statute can constitutionally bar a person from practicing a lawful profession only for reasons related to his fitness or competence to practice that profession." (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254], fn. omitted; see also *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 663 [97 Cal.Rptr. 320, 488 P.2d 648]; *Brewer* v. *Department of Motor Vehicles* (1979) 93 Cal.App.3d 358, 368 [155 Cal.Rptr. 643]; *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 575 [146 Cal.Rptr. 653].)

The court in *Matanky* v. *Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 305 [144 Cal.Rptr. 826], agreed that:

"[A] professional license may be revoked only if the conduct upon which the revocation is based relates to the practice of the particular profession and thereby demonstrates an unfitness to practice such profession." Whether this requirement tying the conduct to the fitness or competence to practice a profession is termed a "nexus," as in *Windham* v. *Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 466 [163 Cal.Rptr. 566], or a "relationship," the inherent meaning is the same. There must be a logical connection of licensees' conduct to their fitness or competence to practice the profession or to the qualifications, functions, or duties of the profession in question.

Despite the omission of an explicit requirement of a "substantial relationship" in subdivision (g) we also conclude the Legislature intended such a requirement. Clare contends that, because section 5100, subdivision (a) included express language requiring a "substantial relationship" between a crime and qualifications, functions, or duties as an accountant, the Legislature must have specifically intended to preclude such a requirement under

subdivision (g), thus permitting licensees to be deprived of their ability to practice their profession in California where the right to do so in other jurisdictions has been suspended for reasons unrelated to competency or misconduct. Under Clare's interpretation, subdivision (g) would be an unconstitutional attempt to create an irrebutable presumption that any federal agency suspension must be founded on a licensee's unprofessional conduct, and a denial of due process interfering with the fundamental right to practice one's profession. For instance, in Clare's view, a federal agency suspension for failure to pay license fees would permit California discipline pursuant to subdivision (g).

■ We must "adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision's constitutionality." (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) One court recently summarized the rules applied in testing the constitutionality of a statute, as follows:

"In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.] A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. [Citation.] The corollary to the challenger's burden is that if the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail." (*Mounts* v. *Uyeda* (1991) 227 Cal.App.3d 111, 122 [277 Cal.Rptr. 730].) With these principles in mind, we address the specific challenges to subdivision (g) which Clare presents.

### A.

Clare first contends subdivision (g) is unconstitutional on its face, regardless of the specific facts of his situation, because the statute possibly could be invalid if applied under certain hypothetical circumstances. As examples, Clare suggests the statute could apply where an accountant's right to practice before some governmental agency was suspended or revoked because of a failure to pay fees or even because of the accountant's race. These hypothetical circumstances are avoided in light of the "substantial relationship" requirement we conclude is implicitly contained in subdivision (g). Moreover, we need only to decide whether the statute was properly and validly applied in this particular fact situation, not whether under some hypothetical situation the statute might possibly be unconstitutionally applied.

"To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute, or as to particular [hypothetical facts]. Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215], original italics.)

Clare does not present a valid argument that the statute is unconstitutional under all applications. The *Mounts* decision discussed these issues, stating:

"A statute is not facially unconstitutional simply because it may not be constitutionally applied to some persons or circumstances; at a minimum its unlawful application must be substantial and real when judged in relation to the statute's plainly legitimate sweep. Unless it is in total conflict with the Constitution, any overbreadth is cured by a case-by-case analysis of the particular fact situation. [Citation.] A statute will be declared invalid in its entirety only when its scope cannot be limited to constitutionally applicable situations except by reading in numerous qualifications and exceptions, i.e., rewriting it, or if it is invalid in certain situations and cannot be enforced in others without danger of an uncertain or vague future application." (*Mounts* v. *Uyeda*, *supra*, 227 Cal.App.3d at p. 122.)

Since we have concluded above that subdivision (g) requires a showing of a "substantial relationship" between the conduct underlying the governmental agency suspension or revocation and an accountant's qualifications, functions, or duties, we have limited the possible application of the statute to only those circumstances which are constitutionally valid. Accordingly, Clare's contention that subdivision (g) is unconstitutional on its face is without merit.

### B.

Similarly, Clare contends subdivision (g) is unconstitutional, because it sets forth an irrebuttable presumption that any governmental agency suspension is a result of conduct related to an accountant's qualifications, functions, or duties. However, such contention disappears when the "substantial relationship" requirement is applied to subdivision (g), as we decided above. The statute, when properly applied, does not result in any irrebuttable presumption, because a finding of a "substantial relationship" is required.

### C.

■ Clare's next contention is that subdivision (g) is invalid, because it results in reliance upon different standards of proof and different accounting

practice standards. Clare argues the FHLBB disciplinary action was based upon a system under which the board needed only to show Clare's conduct was wrongful by a preponderance of the evidence, whereas disciplinary action under California law requires proof by clear and convincing evidence. We see no merit in this contention, since the Legislature presumably was cognizant of actual or potential differing standards of proof applied by various governmental agencies when it adopted subdivision (g). Further, this argument has no relevance to Clare's situation because his federal suspension was entered upon his stipulation, not upon any factual findings after submission of evidence. The only factfinding meaningful for our review is that in which the clear and convincing evidence standard of proof was applied, i.e. in the state's determination whether there was an FHLBB suspension and the existence of the required "substantial relationship."

Addressing Clare's related contention, we conclude the Legislature must have been aware that other governmental bodies and agencies would not necessarily employ the precise standards of accounting practice as California. Clare points to the fact that the FHLBB allows discipline of an accountant for mere appearance of a lack of independence, whereas California requires an actual lack of independence for discipline directly under its laws or regulations. However, by adoption of subdivision (g) allowing the CSBA to discipline an accountant based upon discipline imposed by other governmental bodies or agencies, the Legislature must have intended to allow the CSBA the power to discipline accountants for actions which violate professional standards regulating conduct of licensees in other jurisdictions even where they would not have directly violated California's own rules. We do not believe it unreasonable for this state to rely on a licensee's failure to conform to professional conduct regulations imposed by, and voluntarily assumed in other jurisdictions. Accordingly, we reject Clare's contention the statute is invalid as a result of such extension.

### D.

■ Clare's next contention is subdivision (g) is unconstitutionally vague. We conclude this contention is wholly without merit. As our Supreme Court has stated:

"[W]e must determine not whether the rule is vague in the abstract but, rather, whether it is vague as applied to this appellant's conduct in light of the specific facts of this particular case. . . .

". . . A number of California cases have held that where the language of a statute fails to provide an objective standard by which conduct can be

judged, the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the statute applies." (*Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 765 [221 Cal.Rptr. 779, 710 P.2d 845].)

We find no vagueness in the application of subdivision (g) to Clare's situation. Every accountant is charged with knowing rules applicable to his or her accounting practice. For instance, an accountant practicing only in California and not before any governmental agencies normally must be aware of only California's specific practice rules. However, if an accountant practices before the federal Securities and Exchange Commission by performing audits for publicly held companies, he or she must also be aware of and comply with that agency's practice rules. Clare knew Sun was regulated by the FHLBB and that by performing accounting services for that institution he was subject to the FHLBB's rules for the practice of accounting. Subdivision (g) clearly states that a suspension by a governmental agency is grounds for disciplinary action by the CSBA. Although Clare asserts he did not know he could have been disciplined by the CSBA as a result of the FHLBB suspension, any subjective unawareness could not have been based on ambiguity in the statute.

### E.

Clare's next contention is that the use of his compromise agreement with the FHLBB to impose California discipline was improper and unconstitutional. This contention is also without merit. Clare incorrectly contends the discipline was based on that agreement in which he denied any specific wrongdoing. However, his suspension is not based upon admissions of wrongful conduct, but rather upon his actual suspension by the governmental agency.

### F.

Clare next contends the application of subdivision (g) was an improper application of collateral estoppel. This contention also is misguided and without merit. Clare's discipline imposed under subdivision (g) did not rely on collateral estoppel. The board did not rely on factual findings by the FHLBB or facts contained in the "compromise agreement." Rather, Clare's subdivision (g) discipline was a direct result of the disciplinary order of the FHLBB pursuant to which Clare's right to practice before the FHLBB was suspended for seven years. Thus, it was the formal suspension by the FHLBB that led to Clare's subsequent discipline by the CSBA under subdivision (g). Collateral estoppel was not involved.

## IV

■ Finally, we conclude substantial evidence supports the trial court's implicit adoption of the CSBA's finding the FHLBB suspension is substantially related to Clare's practice of accounting.

Substantial evidence in support of the "substantial relationship" finding is found in Clare's own evidence submitted to the CSBA and the court. Although Clare specifically denied the factual allegations of the FHLBB Notice. Clare's own documents and testimony established the necessary "nexus" between the conduct underlying the FHLBB suspension and his practice of accounting. Without going into specific detail, we note Clare admitted he acted as a conduit for placing Dierdorff's bets with Cylke, and he intentionally refrained from informing Sun's board of directors of the Danzer account, which Dierdorff had wrongfully established, for over five months after he learned of it. Although Clare contends the CSBA and the court cannot use evidence submitted by him for purposes of mitigation for other purposes, such as support in finding conduct resulting in his FHLBB suspension, we conclude that Clare's evidence need not be so limited and may serve as support for their respective findings of conduct relating to Clare's practice of accounting. Such conduct on behalf of Clare clearly is related to his functions or duties as an accountant, as the conduct occurred in the performance of his duties as an accountant for Sun.

### DISPOSITION

The judgment is affirmed.

Huffman, J., and Nares, J., concurred.