Filed 7/15/16  Widenbaum v. Cal. Dept. of Consumer Affairs CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JONATHAN WIDENBAUM,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CONSUMER AFFAIRS et al.,<br><br>          Defendants and Respondents. | A142454<br><br>(Contra Costa County<br>Super. Ct. No. N140353) |

        After his chiropractor license was revoked by the California Board of Chiropractic Examiners (BCE or Board), Jonathan Widenbaum challenged the decision through a petition for writ of mandate in the trial court.  He appeals the trial court's decision denying his petition.  On appeal, Widenbaum contends that 2013 legislation placing the BCE within the Department of Consumer Affairs (DCA) was unconstitutional, that the Board relied on the advice of a DCA attorney who had a conflict of interest, that a member of the Board was improperly disqualified from considering his case, and that the Board committed various procedural irregularities.  We shall affirm the judgment.

## I.  BACKGROUND

        The BCE filed an accusation against Widenbaum alleging acts of unprofessional conduct and sexual misconduct against four female patients.  A hearing was held before an administrative law judge (ALJ) and, according to the ALJ's proposed decision, the record was closed and the matter was submitted on February 14, 2013.  The ALJ concluded that clear and convincing evidence established that Widenbaum engaged in

1

sexual misconduct and unprofessional conduct and recommended revocation of his license.

After considering the matter at an October 29, 2013 closed session, the BCE issued an "Order of Nonadoption" on November 8, 2013, stating it rejected the ALJ's proposed decision and that it would decide the case "upon the record," including the transcript of the hearing before the ALJ, and written argument by the parties. With the order, the BCE sent Widenbaum a letter, signed by a staff member, informing him that the Board had discussed the ALJ's proposed decision at a closed session and had elected to "non-adopt" it. The letter stated that written argument must be limited to evidence in the record and that no new evidence would be permitted. Widenbaum filed a request for reconsideration or clarification of the order to the extent it limited the evidence the BCE would consider at its upcoming hearing. In an order dated December 11, 2013, the BCE notified the parties of the deadline to submit argument and stated, "Written argument shall be limited to evidence contained in the record. No new evidence may be submitted."

The BCE considered Widenbaum's case in a closed session on January 16, 2014. It rejected his request to consider additional evidence. The Board then found by clear and convincing evidence that Widenbaum had engaged in sexual misconduct with four female patients and that his actions constituted gross negligence, repeated negligence, and unprofessional conduct.[1] The BCE also concluded there was no evidence Widenbaum had been rehabilitated. The Board revoked his license.

Widenbaum petitioned the trial court for a writ of mandate setting aside the BCE's decision and order. In his petition, he raised only procedural objections: that the BCE's order was invalid because the board was constituted illegally; that the Board improperly relied on DCA attorneys for advice in disciplinary matters; and that the Board violated legal requirements regarding notice, hearing, quorum, and voting. The trial court denied

---

[1] Widenbaum does not challenge the sufficiency of the evidence to support these findings, and we need not set forth the underlying facts.

the petition, concluding, in its independent judgment, that Widenbaum's license should be revoked due to his sexual misconduct against the four patients.

## II. DISCUSSION

### A. Standard of Review

"The burden of proof in the administrative proceedings involving the revocation or suspension of a professional license is clear and convincing proof to a reasonable certainty. [Citation.] . . . [¶] In reviewing an administrative decision involving a vested right such as a professional license, the superior court applies the independent judgment rule. [Citation.] The trial court examines the administrative record for errors of law and reweighs the evidence in a limited trial de novo. [Citation.] This judicial reweighing requires that a preponderance of the evidence support the administrative disposition. [Citation.] [¶] Finally, the appellate court reviews the record to determine whether the trial court's findings are supported by substantial evidence." (*James v. Board of Dental Examiners* (1985) 172 Cal.App.3d 1096, 1105–1106; and see *Petrucci v. Board of Medical Examiners* (1975) 45 Cal.App.3d 83, 87.) The appellate court decides issues of law independently. (*Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 768; *Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095–1096.) Where the facts are not in dispute, whether an administrative agency has exceeded its jurisdiction is a question of law to be reviewed de novo. (*Stiger v. Flippin* (2011) 201 Cal.App.4th 646, 651.) An agency's choice of penalty is reviewed for abuse of discretion. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 53–54; *Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 967.)

### B. Challenges to BCE's Authority After 2013 Reorganization Plan

The BCE was created by the Chiropractic Initiative Act of 1922 (the Chiropractic Act or the Act). (Bus. & Prof. Code, § 1000; *People v. Schuster* (1932) 122 Cal.App.Supp. 790, 792.)[2] Until passage of the Chiropractic Act, the Medical

---

[2] As an initiative, the Chiropractic Act was not codified, but is published for reference at sections 1000-1 to 1000-20 of the Business and Professions Code. All undesignated statutory references are to the Business and Professions Code.

Practice Act applied to chiropractors and required them to be licensed by the Board of Medical Examiners (BME); the Chiropractic Act "provides for a state board of chiropractic examiners and empowers them to examine those desiring to practice chiropractic and issue certificates authorizing them so to do," as well as to revoke licenses. (*Schuster*, 122 Cal.App.Supp. at p. 792; § 1000-4, subd. (c).)

In 1937, the Legislature enacted section 102, which provides in pertinent part: "Upon the request of any board regulating, licensing, or controlling any professional or vocational occupation created by an initiative act, the Director of Consumer Affairs may take over the duties of the board under the same conditions and in the same manner as provided in this code for other boards of like character." It appears that in 1946, the BCE elected to subject itself to the administration of the DCA (then known as the Department of Professional and Vocational Standards). It did so after seeking the opinion of the Attorney General on the question of whether, if it decided to come into the Department of Professional and Vocational Standards, it would later be free to withdraw. (4 Ops.Cal.Atty.Gen. 341, 342 (1944).) The Attorney General responded: "There is nothing in the Chiropractic Act that would be incompatible to having the Department of Professional and Vocational Standards perform those numerous financial, clerical, budgetary and other duties that are not specifically, by the Chiropractic Act, imposed upon the Chiropractic Board. [¶] Further, we are of the view that as the Board has the power to accept the services of the Department of Professional and Vocational Standards, it would likewise have the power to sever such relationship should it, for any reason, not desire to continue . . . ." (*Ibid*.) In 1957, while the BCE was voluntarily a division of the DCA's predecessor, a court described it as "the official body charged with the administration and enforcement of [the Chiropractic Act]." (*Cozad v. Board of Chiropractic Examiners* (1957) 153 Cal.App.2d 249, 251.)

In 1976, the Board adopted a resolution, Resolution No. 1-76, severing its relationship with the DCA. In the resolution, the BCE stated that the BME and the DCA had "without pause, been antagonistic to this BOARD and the science of Chiropractic," that the BME, DCA, and Attorney General had "supported the partisan activities" of the

4

BME and sided with the BME on every legal question between the BME and the Board, and that the Attorney General and the DCA had taken the position that the Board could not retain private counsel in order to protect its positions in court. The Board therefore removed itself from the DCA and stated that in the future it would "maintain an entirely autonomous position, free of control by the ATTORNEY GENERAL and the DEPARTMENT OF CONSUMER AFFAIRS," and that it could retain private counsel to represent it in court.

In 2013, the Legislature enacted a "reorganization plan" that, among other things, provided that the departments of which the DCA was comprised included the BCE (§ 101, subd. (ak); Stats. 2013, ch. 352, § 3, pp. 2905–2906) and that the BCE was "within" the DCA (§ 1000; Stats. 2013, ch. 352, § 7, p. 2909).

Widenbaum contends that, because the Legislature may not amend or repeal an initiative statute without the approval of the voters unless the initiative permits it to do so (Cal. Const., art. II, § 10(c)), placing the BCE under the auspices of the DCA unconstitutionally amended the Chiropractic Act and deprived the BCE of its independence. Consequently, Widenbaum argues, the Board's action in disciplining him was invalid.

Respondents' primary response to this argument is that, under the "de facto officer" doctrine, the BCE's authority to discipline Widenbaum may not be challenged in this proceeding. As respondents point out, the essence of Widenbaum's claim is a challenge to the authority of the BCE to decide disciplinary matters while it is part of the DCA. The de facto officer doctrine "bars a challenge to an agency's action based on a purported lack of legal authority to act." (*County of Los Angeles v. State Water Resources Control Bd.* (2006) 143 Cal.App.4th 985, 1000 (*County of Los Angeles*).) In *County of Los Angeles*, the appellate court considered an appeal arising from a regional water board's issuance of a National Pollutant Discharge Elimination System permit. (*Id.* at p. 996.) The appellants challenged the regional board's jurisdiction to issue the permit; the court concluded that the de facto officer doctrine barred such an "indirect challenge" to the board's authority to do so, concluding, "Here, plaintiffs are challenging the permit

5

by attacking the regional board's authority. Under these circumstances, this they may not do in what amounts to a licensing proceeding." (*Id*. at pp. 998, 1000.)

*County of Los Angeles* relied on our Supreme Court's decision in *Marine Forests Society v. California Coastal Com*. (2005) 36 Cal.4th 1 (*Marine Forests*). There, the court considered the validity of actions taken by the Coastal Commission during a period in which an assertedly unconstitutional statutory scheme governing the appointment of the commissioners was in effect. (*Id*. at p. 52.) The high court concluded that even if the prior version of the statutes were unconstitutional, the past actions of the Commission could not properly be set aside on that ground, stating: "[E]ven with regard to those cases in which a timely separation of powers challenge to the Commission's composition has been raised and that remain pending either before the Commission or the courts, we conclude that under the 'de facto officer' doctrine prior actions of the Commission cannot be set aside on the ground that the appointment of the commissioners who participated in the decision may be vulnerable to constitutional challenge." (*Id*. at pp. 53–54.) The court explained: "In essence, Marine Forests contends that there was a constitutional defect in the statutory provisions governing the appointment and tenure of the Commission members that rendered the Commission not legally qualified to act on any quasi-judicial or executive matter. As past California decisions demonstrate, a principal purpose of the de facto office doctrine under California law is to prevent the crippling of an officer's or commission's operations that would occur if this type of claim (which could affect virtually all of the Commission's actions) could be raised in any proceeding challenging an individual action taken by the officer or commission. This debilitating effect is avoided if such a challenge is brought in a separate proceeding that focuses directly on the validity of the officer's or commission's status and in which the requested relief, if ultimately granted by a final judicial decision, would apply only prospectively. [Citation.]" (*Id*. at p. 56.)

Widenbaum contends the de facto officer doctrine is inapplicable here because his challenge is not to the qualifications of a particular member of the Board, but rather to the

6

DCA's interference in the Board's independence.[3]  However, the court in *County of Los Angeles* had no difficulty in applying the de facto officer doctrine to a challenge to the jurisdiction of the agency itself, rather than to the qualifications of its members.  (*County of Los Angeles*, *supra*, 143 Cal.App.4th at pp. 998–1000.)  This case falls within the rule of *County of Los Angeles*.  Moreover, it raises precisely the concerns discussed in *Marine Forests*—that the challenge Widenbaum raises would cast a cloud over all of the actions the BCE was statutorily authorized to take, including its decisions not only to discipline chiropractors but to license them as well.  (See *Marine Forests*, *supra*, 36 Cal.4th at pp. 55–56.)

In any case, even if the de facto officer doctrine does not apply to this case, we would reject Widenbaum's challenge.  Widenbaum argues extensively that the 2013 amendments to sections 101 and 1000 were unconstitutional because they amended the Chiropractic Act, which was an initiative statute, deprived the BCE of its independence, and violated Resolution 1-76.  On that ground, he urges us to set aside the Board decision.  But he provides no support in law, logic, or policy for the implicit major premise of his argument—that if the Legislature unconstitutionally amends an initiative act creating a board, the board is thereby deprived of the powers granted to it by the initiative.

Through the Chiropractic Act, the people of California granted to the BCE various powers, including the power "[t]o examine applicants and to issue and revoke licenses to practice chiropractic," to summon witnesses and take testimony, to determine minimum qualifications for teachers in chiropractic schools and colleges, to approve chiropractic schools and colleges, to adopt rules and regulations, to hire employees, and to do those things necessary to the exercise of its powers and duties.  (§ 1000-4.)  If accepted, Widenbaum's argument would mean that by allegedly improperly amending sections 101

---

[3] For this proposition, he relies two New York cases, each over 100 years old, considering the qualifications of judges who assertedly had conflicts of interest.  (*Oakley v. Aspinwall* (1850) 3 N.Y. 547; *People v. Whitridge* (N.Y. App. Div. 1911) 144 A.D. 493.)

and 1000 to make the BCE a part of the DCA, the Legislature stripped the Board of its power to revoke licenses.[4]  Widenbaum provides no authority to support this conclusion, and we are aware of none.

We therefore reject Widenbaum's contention that his license revocation should be set aside because the Legislature unconstitutionally amended the Chiropractic Act through the 2013 amendments to sections 101 and 1000.  In reaching this conclusion, we need not consider, and express no view upon, the propriety of the Legislature's actions. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [court does not decide constitutional questions where other grounds are available and dispositive].)

## C. Conflict of Interest and Recusal of Dr. Lubkin

Widenbaum contends the DCA created an "irreconcilable conflict of interest" when it used its own staff attorneys to advise the Board during closed sessions and, as a result, his license revocation should be set aside.[5]  This conflict, he argues, is found in the DCA's hostility to chiropractors and tendency to support physicians in conflicts between the chiropractic and medical boards.  Rather than relying on the advice of DCA's counsel, he argues, the BCE should have used the services of the Attorney General's office, which "has charge, as attorney, of all legal matters in which the State is interested, except the business of The Regents of the University of California and of such other boards or officers as are by law authorized to employ attorneys."  (Gov. Code, § 12511.) But Widenbaum has not demonstrated any actual conflict of interest nor, more importantly, any harm or prejudice to him resulting from the advice provided by the DCA attorney.  It is well established that " 'a judgment will not be reversed unless it can be

---

[4] By any measure, that is a far more drastic "amendment" to the Chiropractic Act than the one Widenbaum contends took place here.  Indeed, carried to its logical conclusion, his argument would mean that the Legislature has deprived the Board of its power to carry out its other powers and duties, thereby effectively annulling the Chiropractic Act.

[5] The Attorney General does not dispute that DCA staff attorneys advised the BCE in connection with these proceedings.

shown that a trial court error in the case affected the result.' [Citation.] ' "The burden is on the appellant, not alone to show error, but to show injury from the error." ' [Citation.] 'Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record.' [Citation.] 'Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal. [Citation.] A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' [Citation.]" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822–823.)

Rather than make this showing, Widenbaum relies on pure speculation. The conflict he claims lies in the DCA's asserted hostility to chiropractors. But there is no basis to conclude that the participation of the DCA's attorney led the BCE—comprised primarily of chiropractors—to be biased against Widenbaum or, for that matter, any other chiropractor before it, or that he was deprived of a fair hearing.[6] (§ 1000-1; Code Civ. Proc., § 1094.5, subd. (b).)

Widenbaum also points to the declaration of Hugh Lubkin, D.C., a member of the Board. Dr. Lubkin had participated in the October 29, 2013 hearing that resulted in the Board's order of nonadoption of the ALJ's proposed decision. He stated that during a break in the January 16, 2014 session at which Widenbaum's case was considered and decided, a DCA attorney "confronted" him and told him he would have to recuse himself from further deliberations or voting in the Widenbaum matter due to his association with one of the expert witnesses. Dr. Lubkin stated that "it was known that [he] was in support of a disciplinary decision other than a full and permanent revoked license." Dr. Lubkin averred that he did not believe he had any conflict that would have required recusal, and that he was not asked to recuse himself from considering another case the same day involving the same expert. Nevertheless, he recused himself from

---

[6] The contention that DCA's counsel were hostile to the Board is undermined by the evidence that even before the Legislature brought the BCE under the aegis of the DCA, DCA staff attorneys represented the Board at meetings.

9

Widenbaum's case.  Once again, any connection to an asserted conflict on the part of the DCA attorney is entirely speculative.  Whether or not Dr. Lubkin's recusal was necessary, there is no basis to conclude that counsel was biased against chiropractors or that the Board's decision was affected by any such bias on her part.[7]

We likewise reject Widenbaum's contention that Dr. Lubkin's "removal" deprived him of due process.  As Widenbaum points out, the requirements of due process extend to administrative adjudications, and they include "a fair tribunal . . . in which the judge or other decision maker is free of bias for or against a party."  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 215.)  Here, the record before us does not show that the decision makers were biased against Widenbaum.  Nor, for that matter, does it show that the Board or DCA attorney "removed" Dr. Lubkin.  Rather, at most it shows that the DCA attorney advised him to recuse himself, that he did so although he did not believe the conflict warranted recusal, and that he did not raise the issue with other Board members or staff members.  On this record, we find no denial of due process.

## D. Procedural Contentions

Widenbaum also contends the Board violated the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.) and committed other procedural violations.

Government Code section 11126.3, subdivision (a) provides that, before holding a closed session, a state body must disclose "the general nature of the item or items to be discussed in the closed session.  The disclosure may take the form of a reference to the item or items as they are listed by number or letter on the agenda."  The state body may consider only the matters covered in the disclosure.  (*Id*., subd. (b).)  The agenda must include "a brief description of the items of business to be transacted or discussed in either open or closed session.  A brief general description of an item generally need not exceed 20 words.  A description of an item to be transacted or discussed in closed session shall

---

[7] Because we conclude Widenbaum has not met his burden to show a miscarriage of justice, we need not consider the propriety of the Board relying on counsel other than the Attorney General.

10

include a citation of the specific statutory authority under which a closed session is being held." (Gov. Code, § 11125, subd. (b).) In construing a similar provision of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), courts have concluded that a "brief general description" may be adequate if it includes the general nature of the subject of the meeting, and need not specify the name of the person at issue. (*Duval v. Board of Trustees* (2001) 93 Cal.App.4th 902, 907 [" 'Section 54957—Public Employee Evaluation' " gave adequate notice of actions taken in closed session]; *Moreno v. City of King* (2005) 127 Cal.App.4th 17, 26 ["brief general description" for purposes of Gov. Code, § 54954.2, subd. (a)(1) would be satisfied by agenda items that said " 'Public Employee Dismissal' "].)[8]

Widenbaum contends the Board did not provide adequate notice that it intended to consider disqualifying Dr. Lubkin at the January 16, 2014 meeting. This contention is meritless. The record does not show the Board took any action to "disqualify" Dr. Lubkin or that it was involved in his recusal in any way. Widenbaum has not established a violation of the Bagley-Keene Act.

Widenbaum also contends there is no evidence the Board lawfully met, considered, and voted on the order precluding consideration of further evidence. We reject this contention. The "Order of Nonadoption" was made after the Board considered the matter in closed session at an October 29, 2013 meeting. The agenda for that meeting described the matter as "Deliberation on Disciplinary Decisions Pursuant to California Government Code Section 11126(c)(3)." The order, signed by the chair of the Board, stated, "*The Board of Chiropractic Examiners will decide the case upon the record*, including the transcript of the hearing held on February 11, 12, 13, 14, 2013, and upon such written argument as the parties may wish to submit. The parties will be notified of the date for submission of such argument when the transcript of the above-mentioned

---

[8] The statutory scheme interpreted by *Duval* and *Moreno* includes examples of permissible descriptions of closed session items, including the provision that closed session items regarding public employee discipline, dismissal, or release need not include additional information. (Gov. Code, § 54954.5, subd. (e).)

11

hearing becomes available." (Italics added.) The cover letter enclosing the order, signed by a BCE staff member, informed Widenbaum that it would inform him of the deadline to file a written argument, that written argument should be limited to evidence in the record, and that no new evidence could be submitted.

With his November 22, 2013 "Request for Reconsideration/Clarification" of the Order of Nonadoption, Widenbaum submitted new evidence. On December 11, the Board's chair made an "Order Fixing Date for Submission of Written Argument," notifying the parties that written argument must be submitted by December 30, 2013, and that "Written argument shall be limited to evidence contained in the record. No new evidence may be submitted." In its February 20, 2014 Decision After Nonadoption, the Board denied Widenbaum's request to introduce additional evidence, stating, "Under [Government Code] section 11517, the Board has discretion to determine whether to take additional evidence after the record has closed. The Board does not agree to rescind its prior order or allow the introduction of new or additional evidence."

Widenbaum argues there is no indication the Board itself decided not to allow additional evidence at the time of the October 29, 2013 Board meeting; rather, he argues, the decision was improperly made by the staff member who signed the cover letter accompanying the order. Not so. The order itself states clearly that the matter would be decided "*upon the record*." The clear import of this order is that the BCE's review would be limited to the record.

Widenbaum asserts, however, that there is no evidence the Board held a noticed meeting or voted on the matter before issuing the December 11, 2013 order setting the deadline for written argument and providing that written argument would be limited to evidence in the record. He has not drawn our attention to any authority that would require the Board to vote before performing the ministerial act of setting a briefing schedule. And, as we have discussed, the Board had already made an order providing that the matter would be decided on the record. The December 11 order did not constitute a discretionary decision on Widenbaum's request for permission to submit

12

additional evidence; the Board ruled on that request during the January 16, 2014 meeting. In the circumstances, we reject Widenbaum's procedural claims.

### III. DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.