[No. B067385. Second Dist., Div. Two. June 24, 1993.]

NEAL ALLEN MAREK et al., Petitioners and Respondents, v.
BOARD OF PODIATRIC MEDICINE, Respondent and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Alvin Korobkin, Assistant Attorney General, Jana Tuton and Arthur Taggart, Deputy Attorneys General, for Respondent and Appellant.

Theodora Poloynis-Engen for Petitioners and Respondents.

**OPINION**

**BOREN, P. J.**—The Board of Podiatric Medicine, Medical Board of California, Department of Consumer Affairs (the California Board) appeals from a judgment granting a writ of administrative mandamus (Code Civ. Proc., § 1094.5) brought by Dr. Neal Allen Marek and Dr. Robert G. Basinger (petitioners). Petitioners had successfully challenged in the superior court the California Board's disciplinary order, which had revoked the license of each doctor but stayed revocation and placed each on probation for a three-year period upon specified terms and conditions.

Petitioners had previously entered into a consent decree in Nevada, pursuant to which, and by petitioners' express agreement, the Nevada State Board of Podiatry (the Nevada Board) issued an order which revoked petitioners' licenses to practice and placed them on three years' probation upon certain terms and conditions. In the consent decree, petitioners made no admission of wrongdoing, and the Nevada Board imposed discipline solely pursuant to petitioners' consent, without formally presenting evidence. The principal issue in this case is whether, pursuant to Business and

Professions Code section 2305,[1] the Nevada Board's order, issued without admissions or the formal taking of evidence, forms a permissible basis for the California Board to impose discipline upon petitioners regarding their California podiatric licenses. Because we find that section 2305 requires only that the California Board determine that disciplinary action by another state as to a license to practice medicine issued by that other state had occurred and that the California Board need not take evidence on or establish the factual predicate for that other state's disciplinary action, a full and fair hearing as required by due process occurred as to the limited factual question of whether discipline was imposed by another state. The judgment granting the petition for writ of mandate is therefore reversed.

FACTS

In April of 1985, an administrative complaint was filed against petitioners by the Nevada Board. At that time, petitioners were practicing podiatry in Nevada, but were also licensed as doctors of podiatric medicine in California. The complaint by the Nevada Board contained numerous counts alleging, inter alia, gross incompetence, unprofessional and unsafe conduct, unethical conduct, fraud and false representations, failure to keep adequate medical records, and permitting an unlicensed person in their employ to practice as a podiatry hygienist.

On June 17, 1985, petitioners entered into a consent decree with the Nevada Board, whereby the parties stipulated to certain matters and agreed to the decision and order of the Nevada Board regarding disciplinary sanctions. Under the terms of the consent decree, petitioners did not admit the truth of any of the allegations made against them in the complaint. Petitioners' consent decree recited that they "[chose] not to further contest [the] allegations, and further acknowledge that the failure to contest the allegations subjects them to disciplinary action by the [Nevada Board]."

Pursuant to the consent decree, the Nevada Board ordered petitioners' podiatry licenses revoked, but with execution of the order of revocation stayed and petitioners placed on three years' probation upon numerous terms and conditions relating to petitioners' additional professional training, submission to a podiatry competency examination, limitations as to the numbers of patients to be treated and the numbers and types of surgeries to be

---

[1]Business and Professions Code section 2305 provides as follows: "The revocation, suspension, or other discipline by another state of a license or certificate to practice medicine issued by the state, or the revocation, suspension, or restriction of the authority to practice medicine by any agency of the federal government, to a licensee under this chapter shall constitute grounds for disciplinary action for unprofessional conduct against such licensee in this state."

performed, maintaining complete and accurate medical records, and hiring a utilization review nurse selected by the Nevada Board to monitor and review the records of every patient for a three-year period. The Nevada Board's order further provided that any periods of residency or practice outside of Nevada would not apply to the reduction of the three-year probationary period.

Soon after the Nevada Board's order pursuant to the consent decree, petitioners moved to Bakersfield, California, where they practiced together for approximately two years. In 1987, Dr. Basinger moved his practice to Redding, California. Dr. Marek continued to practice in Bakersfield until 1989, when he returned to Nevada to practice podiatry. While practicing in California, Marek substantially complied with the Nevada Board's order, including hiring a utilization review nurse, restricting his practice and referring out more complicated cases, limiting the number of surgeries performed each day, giving written estimates, not using assistant surgeons, and not seeing an excessive number of patients. While practicing in Nevada, Dr. Marek observed the terms of his professional probation. Similarly, while practicing in California, Dr. Basinger substantially complied with the Nevada Board's order regarding the conduct of his practice and various restrictions on it.

Dr. Marek completed a competency examination administered by the Nevada Board, began compliance with the Nevada Board's order prior to leaving that state in 1986, and returned to Nevada in 1989, where he has apparently continued practicing podiatry under the constraints of his probationary term. Dr. Basinger has not satisfied any terms of the Nevada Board's order because he has resided outside that state on nearly a continuous basis since signing the consent decree in 1985.

In 1986, the California Board filed accusations against both petitioners, alleging violations of Business and Professions Code section 2305, i.e., that petitioners had engaged in unprofessional conduct based upon the professional disciplinary order imposed by the Nevada Board pursuant to the consent decree. On May 29, 1991, an administrative law judge (ALJ) determined after an administrative hearing that the accusation against each petitioner should be dismissed. The ALJ's order as to each petitioner was based upon the following determination: "Cause exists to discipline [petitioner's] license under the provisions of Business and Professions Code section 2305 for his having been professionally disciplined by another state. [¶] However, given the amount of time which has elapsed since the acts on which the Nevada discipline was based, the absence of a factual predicate for the Nevada discipline, and [petitioner's] competent and successful practice

in California in the interim, it cannot be said that there is any public interest which would justify imposing any discipline against [petitioner] based solely on the Nevada discipline."

The California Board, however, refused to adopt the ALJ's proposed decisions. On October 25, 1991, the California Board ruled as to each petitioner, "Cause exists to discipline [petitioner's] license under the provisions of Section[] 2305 of the Business and Professions Code because [petitioner's] license to practice podiatry was subject to disciplinary action in the State of Nevada." The California Board revoked the podiatry licenses of both petitioners, but stayed the revocations and placed both petitioners on probation for three years upon numerous terms and conditions. The California Board's terms and conditions included oversight and monitoring of the petitioners' practices by a podiatric medical consultant designated by the Board, the requirement of maintaining complete medical records for all patients, fulfilling specified hours of continuing medical education each year, appearing for personal interviews with the California Board's medical consultant, and submitting various periodic reports and declarations. The California Board's decision further provided that upon the successful completion of the probationary term, each petitioner's license to practice podiatric medicine would be "fully restored."

On November 25, 1991, petitioners filed an ex parte application for a stay of the administrative decision and a petition for a writ of mandate. After a hearing on the petition for writ of mandate, the superior court granted a writ of administrative mandamus prohibiting the California Board from acting upon its disciplinary decision regarding petitioners. The superior court found that since there was no evidence in the consent decree supporting the underlying disciplinary action taken by the Nevada Board, the California Board had no grounds or factual basis to support its order, which thus violated due process. The California Board appeals.

## DISCUSSION

I. *Application of Business and Professions Code section 2305.*

■ It is well settled that "[t]he right to practice one's profession is a fundamental vested right and if a person's license to practice that profession is revoked by an administrative agency, when a petition for writ of mandate is brought for restoration of the license, the trial court must apply its independent judgment to review the facts underlying the administrative decision." (*Vaill* v. *Edmonds* (1991) 4 Cal.App.4th 247, 257 [6 Cal.Rptr.2d 1].) After a trial court's exercise of its independent judgment in review of the

facts, an appellate court is limited to determining whether the trial court's findings are supported by substantial evidence but may, nonetheless, independently exercise its ability to decide issues of law. (*Id.* at p. 258; *Clare* v. *State Bd. of Accountancy* (1992) 10 Cal.App.4th 294, 300 [12 Cal.Rptr. 481].)

Pursuant to Business and Professions Code section 2305, the revocation, suspension or other discipline by another state of a medical license or certificate issued by that state "shall constitute grounds for disciplinary action for unprofessional conduct against such licensee in this state." ■ Our Supreme Court has repeatedly held that the state cannot revoke the license of a professional unless the licensee's conduct relates to the fitness or competence to practice that profession. (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254]; *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 663 [97 Cal.Rptr. 320, 488 P.2d 648]; see *Clare* v. *State Bd. of Accountancy, supra,* 10 Cal.App.4th at p. 302.) Although Business and Professions Code section 2305 does not by its language require a showing of such a logical nexus or rational relationship, the statute must be read in such a manner to ensure its constitutionality. (*Clare* v. *State Bd. of Accountancy, supra,* 10 Cal.App.4th at pp. 303-306.)

Indeed, petitioners specifically do not challenge the constitutionality of Business and Professions Code section 2305. The existence of a rational relationship between the imposition of professional discipline by the pertinent agency in any other state (even pursuant to a consent decree) and the licensee's qualifications or professional competence in this state is unquestioned.

Rather, petitioners challenge the manner in which the California statute was applied to them. ■ Specifically, petitioners urge that they were deprived of their constitutional due process right to a full and fair hearing on the charges because the consent decree upon which the Nevada Board based its disciplinary order contained no admissions of any professional misconduct, and that the terms of the consent decree provided that it "will not be construed as an admission nor used by the parties hereto [petitioners and the Nevada Board] for any reason whatsoever."

However, the broad language of Business and Professions Code section 2305 does not limit its application only to professional discipline imposed after a full hearing on the merits. The statute applies by its terms to any discipline imposed by another state on the holder of a license or certificate to practice medicine issued by that state and thus includes, as here, acquiescence by signing a consent decree to disciplinary action without any admission of the charges brought by the foreign jurisdiction. The focus of section

2305 is the mere fact that a measure of discipline was imposed on the licensee and not how it was imposed by the foreign jurisdiction. Pursuant to the language of section 2305, petitioners' "unprofessional conduct" lies not in the alleged underlying misfeasance in Nevada but in the fact that discipline has been imposed by another state regarding petitioners' licenses to practice medicine in that other state. Petitioners improperly seek to expand the scope of section 2305 to include requirements of investigation and proof of the underlying basis for the consent decree.

The situation in the present case is analogous to that in *Clare* v. *State Bd. of Accountancy, supra,* 10 Cal.App.4th 294. In *Clare,* an accountant's license was suspended by the California State Board of Accountancy (CSBA) based solely on the fact that he had been earlier suspended by the Federal Home Loan Bank Board (FHLBB). The CSBA predicated its suspension upon Business and Professions Code section 5100, subdivision (g), which permitted such disciplinary action for "unprofessional conduct" which included the "[s]uspension or revocation of the right to practice before any governmental body or agency." The accountant in *Clare* had been earlier suspended by the FHLBB based upon "a stipulation and consent to entry of a disciplinary order" (10 Cal.App.4th at p. 299) agreed to between the accountant and the FHLBB.

Business and Professions Code section 5100, subdivision (g), pertaining to disciplinary action for accountants based upon unprofessional conduct premised upon prior disciplinary action by another governmental body or agency is the obvious functional equivalent to Business and Professions Code section 2305, which was the statutory basis for the imposition of probationary terms and restrictions upon petitioners' California medical licenses. The court in *Clare* rejected the claimed impropriety in California's discipline based on the use of the FHLBB compromise agreement, which apparently had the same effect as the consent decree in the present case. The accountant in *Clare* erroneously asserted that his "discipline was based on that agreement in which he denied any specific wrongdoing. However, his suspension is not based upon admissions of wrongful conduct, but rather upon his actual suspension by the governmental agency." (10 Cal.App.4th at p. 306.) Since in the present case, as in *Clare,* the merits of the charges in the foreign jurisdiction were not in issue, petitioners' inability to offer evidence in rebuttal to those charges did not deny petitioners any constitutional right to a full and fair hearing before the California Board.

Permitting the disciplinary action in California based solely on the fact of disciplinary action in another jurisdiction is consistent with the purpose of the Medical Practice Act (Bus. & Prof. Code, § 2000 et seq.) to protect the

state's citizens by regulation of the professional conduct of its health practitioners. (See *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 577 [146 Cal.Rptr. 653]; *Fuller* v. *Board of Medical Examiners* (1936) 14 Cal.App.2d 734, 741 [59 P.2d 171].) The California Board is entitled to protect its citizens and to regulate the practice of its health care practitioners to the same extent that the Nevada Board is as to its citizens and health care practitioners. Indeed, California imposed constraints and safeguards upon petitioners' practice in this state which were largely identical to the constraints imposed by Nevada upon petitioners' practice in that state.

Not only does the unambiguous language in Business and Professions Code section 2305 on its face not require any broad inquiry into the licensee's underlying conduct which led to the consent decree (see *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]), but the limited inquiry required is particularly appropriate. First, to permit an inquiry into the underlying conduct which led to a consent decree would, in the context of a proceeding pursuant to section 2305, burden California with the physical and financial task of investigating allegations of misconduct by its licensees in foreign jurisdictions and then bringing witnesses and evidence to this state to prove its case at an administrative hearing. Second, and more significant, limiting the application of section 2305 to situations where the licensees admit culpability or where misconduct is proven in the foreign jurisdiction would make California a safe haven for medical practitioners who, in the face of charges of unprofessional conduct enter into consent decrees in other jurisdictions without making any admissions, leave that other jurisdiction, establish medical practices in California and thus avoid review of their medical practices by *any* licensing agency. Such a result would be contrary to the interests of the state of California in ensuring the professional conduct of its medical licensees.

Moreover, contrary to petitioners' assertion, the discipline imposed by the California Board pursuant to section 2305 did not rely on collateral estoppel. As previously discussed, the California Board did not rely on factual findings by the Nevada Board or on facts contained in the consent decree. Rather, since the California Board's disciplinary order was a direct result of the Nevada Board's disciplinary order, the Nevada order was not used "offensively" to prevent petitioners from relitigating in California issues resolved in the earlier Nevada proceeding.

The present case is thus distinguishable from *Halyalkar* v. *Board of Regents* (1988) 72 N.Y.2d 261 [532 N.Y.S.2d 85, 527 N.E.2d 1222], which

held that the State of New York had improperly invoked the doctrine of collateral estoppel to give conclusive effect to a consent order in an earlier administrative proceeding in the State of New Jersey, where the medical licensee had entered a plea of guilty to similar misconduct and had agreed to a three-month suspension. The licensee was then charged in New York not with having a prior disciplinary sanction in another state, the charge against petitioners in the present case, but rather was charged with the same underlying professional misconduct which had been proven in New Jersey. (See also *Parklane Hosiery Co.* v. *Shore* (1979) 439 U.S. 322 [58 L.Ed.2d 2d 552, 99 S.Ct. 645]; *Imen* v. *Glassford* (1988) 201 Cal.App.3d 898, 905-908 [247 Cal.Rptr. 514].) *Halyalkar* and other cases involving the offensive use of collateral estoppel are thus not controlling.

■ Finally, it is apparent in the present case that there was substantial evidence before the trial court that the California Board had sufficient factual support for its finding of a violation of Business and Professions Code section 2305. The evidence before the trial court established that the executive director of the California Board brought the accusation against petitioners in her official capacity, that petitioners were licensed in California, that as a result of an administrative complaint filed by the Nevada Board petitioners entered consent decrees resulting in professional disciplinary action, and that petitioners engaged in the practice of medicine in California after entering the consent decree in Nevada. Such facts constitute substantial evidence of petitioners' violations of Business and Professions Code section 2305.

II. *In imposing its discipline, the California Board did not abuse its discretion.*

■ Petitioners contend that the California Board should not impose any discipline because they have demonstrated rehabilitation to the extent that any discipline would serve no legitimate public interest. Petitioners emphasize that at the administrative hearing in the present case they presented numerous witnesses who testified as to their professional ability, their reputations for truth and veracity, and the quality of their patient record-keeping. Petitioners each apparently complied with the terms of the Nevada consent decree, both in Nevada and in California, and engaged in commendable voluntary podiatric service programs for the elderly and the blind. Nonetheless, California is entitled to protect its citizens and to ensure the high quality of medical practice to the same extent as Nevada, the California Board's probationary constraints and restrictions are not inappropriate, and the California Board did not abuse its broad discretion in imposing its

disciplinary order. (See *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306]; *Talmo* v. *Civil Service Com.* (1991) 231 Cal.App.3d 210, 227-228 [282 Cal.Rptr. 240]; *Richardson* v. *Bd. of Supervisors* (1988) 203 Cal.App.3d 486, 494-495 [250 Cal.Rptr. 1].)[2]

## DISPOSITION

The judgment as to both petitioners is reversed and the superior court is ordered to enter a new judgment which does not prohibit the California Board from acting upon its decision regarding petitioners. Each party is to bear its own costs on appeal.

Gates, J., and Nott, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 16, 1993.

---

[2]We also note that petitioners may petition the California Board for a modification of the disciplinary order based upon their demonstration of rehabilitation. (Bus. & Prof. Code, § 2307.)