RANDOLPH RAMIREZ *VS*. BOARD OF REGISTRATION IN
MEDICINE.

Suffolk. February 6, 2004. - April 16, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Board of Registration in Medicine. Doctor,* License to practice medicine.
*Administrative Law,* Regulations, Adjudicatory proceeding. *Due Process of
Law,* Adjudicatory proceeding.

This court concluded that a physician who entered into a consensual discipline
order in another jurisdiction, pursuant to which he did not admit to any
wrongdoing, but did agree not to contest certain factual allegations and
further agreed that those allegations constituted grounds for discipline, was
subject to reciprocal discipline in Massachusetts under 243 Code Mass.
Regs. § 1.03(5)(a)(12) [482-484], and that the language of the consent
order was sufficient to establish that the other jurisdiction's disciplinary ac-
tion was taken on grounds for which discipline is authorized in Mas-
sachusetts [484-485]; moreover, such discipline did not deprive the physi-
cian of due process of law [485-486].

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on May 9, 2002.

The case was heard by *Cowin*, J.

*Philip S. Walker*, of Connecticut (*Hobart F. Popick* with him)
for the plaintiff.

*William W. Porter*, Assistant Attorney General, for the
defendant.

MARSHALL, C.J. We consider in this case whether a physician
who entered into a consensual discipline order in another
jurisdiction, pursuant to which he did not admit to any wrongdo-
ing, but did agree not to contest certain factual allegations and
further agreed that those allegations constitute grounds for
discipline, is subject to reciprocal discipline in Massachusetts.
See 243 Code Mass. Regs. § 1.03 (5) (a) (12) (1993). We
conclude that he is.

1. *Background.* Randolph Ramirez is a physician licensed to

practice medicine in the Commonwealth and in the States of Connecticut and Montana. In March, 2000, Ramirez and the Connecticut Department of Public Health, bureau of regulatory services (department), entered into a consent order, which was accepted by the Connecticut Medical Examining Board (Connecticut board). The consent order contained allegations of wrongdoing as follows: in circumstances constituting "illegal, incompetent or negligent conduct in the practice of medicine," Conn. Gen. Stat. § 20-13(c)(4) (1999), or "failure to provide information requested by the department for purpose of completing a health care provider profile," Conn. Gen. Stat. § 20-13(c)(10) (1999), Ramirez removed a boil from a female patient's inner front thigh and then conducted a rectal examination of the patient and failed to note the examination in the patient's medical record; asked a second patient seeking treatment for fatigue questions about her sexual behavior while she was disrobed, asked her to perform stretches while nude, and requested permission to perform a rectal examination, which she refused; and, during an examination of a third patient for foot and back problems, requested that she bend over in front of him while she was wearing only underwear, as part of a spinal assessment.

Ramirez expressly had "chosen not to contest" the consent order's "allegations of wrongdoing," and agreed that the department's allegations as contained in the order "shall be deemed true in any subsequent proceeding before the [Connecticut] Board in which his compliance with this Consent Order or with § 20-13c of the General Statutes of Connecticut, as amended, is at issue." He also agreed that, while admitting no guilt or wrongdoing for purposes of "this or any future proceedings" before the Connecticut board, the order would "have the same effect as if proven and ordered after a full hearing." Ramirez waived his right to a hearing, agreed to pay a civil penalty of $2,000 and agreed to a three-year term of probation with various conditions. He also agreed to permanent restrictions on his practice to the effect that he would "have a female present during any examination or treatment of a disrobed or partially disrobed female patient." Ramirez agreed that the consent order was "not subject to reconsideration, col-

lateral attack or judicial review under any form or in any forum."

On March 14, 2001, the Massachusetts Board of Registration in Medicine (Massachusetts board) commenced disciplinary proceedings against Ramirez, incorporating the Connecticut consent order in its statement of allegations. In its motion for summary decision, the Massachusetts board alleged that Ramirez should be disciplined pursuant to the Massachusetts reciprocal discipline regulation, 243 Code Mass. Regs. § 1.03 (5) (a) (12), which provides that a complaint against a physician may be founded on "[h]aving been disciplined in another jurisdiction in any way by the proper licensing authority for reasons substantially the same as those set forth in [G. L.] c. 112, § 5[,] or 243 [Code Mass. Regs. §] 1.03 (5)." *Id.* The matter was referred to an administrative magistrate for a recommendation. Ramirez was provided with an opportunity for a hearing, but agreed that "there was no purpose in scheduling an evidentiary hearing."

The administrative magistrate concluded that the consent order was a revocable offer of settlement that Ramirez had entered into while admitting no guilt or wrongdoing. He reasoned that, without either an admission of wrongdoing or a final adjudication on the merits, the Massachusetts board could not apply its reciprocal discipline regulation because there "is no way of knowing whether the discipline imposed was for grounds 'substantially the same' as grounds available for discipline in Massachusetts."

The Massachusetts board, however, rejected the administrative magistrate's recommendation, concluding that Ramirez "is guilty of having been disciplined in another jurisdiction by the proper licensing authority for reasons substantially the same as those set forth in [G. L.] c. 112, § 5[,] and 243 [Code Mass. Regs. §] 1.03 (5), in violation of 243 [Code Mass. Regs. §] 1.03 (5) (a) (12)." Referring specifically to the Connecticut consent order, the Massachusetts board found that the allegations of the consent order included "improper conduct with three female patients during the course of physical examinations," that the allegations of the consent order had "the

same effect as if proven and ordered after a full hearing," and concluded that the facts "establish that [Ramirez] has been disciplined in another jurisdiction for reasons substantially the same as those allowed by 243 [Code Mass. Regs. §] 1.03 (5) (a) (3)." The board imposed a sanction of indefinite suspension of Ramirez's licence to practice medicine in the Commonwealth, the suspension to be stayed "immediately upon [Ramirez's] entry into an out-of-[S]tate probation agreement" with the Massachusetts board.

Ramirez sought judicial review of the board's decision from a single justice of this court, pursuant to G. L. c 112, § 64, and G. L. c. 30A, § 14. The single justice affirmed the board's decision, and Ramirez appealed. We affirm the board's decision. See *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 352 n.4 (1988).

2. *Discussion.* The Massachusetts reciprocal discipline regulation permits a physician to be disciplined when he or she has been "disciplined in another jurisdiction in any way," provided that the disciplinary "reasons [are] substantially the same" as would subject the physician to discipline in Massachusetts. 243 Code Mass. Regs. § 1.03 (5) (a) (12). Both requirements are satisfied in this case.

(a) *Foreign discipline.* On its face, 243 Code Mass. Regs. § 1.03 (5) (a) (12) permits reciprocal discipline in Massachusetts when a physician has been disciplined "in any way" in another jurisdiction for actions that would also subject him or her to discipline in this Commonwealth. Hitherto we have applied the regulation in the context of contested proceedings, but have not addressed its application to consensual discipline. See *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 578-579 (1986) (board permitted to give collateral estoppel effect to foreign State's finding of professional negligence, pursuant to reciprocal discipline regulation). In our view, application of the regulation is not limited to contested disciplinary proceedings, where misconduct has been found by the foreign board or where the physician expressly admits to wrongdoing.

Our view is consistent with those of other State courts. Where discipline has been imposed in a foreign jurisdiction by consent, other courts have held that a reciprocating State need not be burdened "with the physical and financial task of investigating

allegations of misconduct by its licensees in foreign jurisdictions and then bringing witnesses and evidence to this [S]tate to prove its case at an administrative hearing." *Marek* v. *Board of Podiatric Med.*, 16 Cal. App. 4th 1089, 1098 (1993) (construing reciprocal discipline statute as requiring existence of relationship between discipline and professional qualifications or competence). We agree with the comment of the *Marek* court when it rejected a challenge similar to the one Ramirez makes here:

> "[L]imiting the application of [the reciprocal discipline statute] to situations where the licensees admit culpability or where misconduct is proven in the foreign jurisdiction would make [the State] a safe haven for medical practitioners who, in the face of charges of unprofessional conduct enter into consent decrees in other jurisdictions without making any admissions, leave that other jurisdiction, establish medical practices in [this State] and thus avoid review of their medical practices by any licencing agency."

*Id.* See *Butts* v. *Wyoming State Bd. of Architects*, 911 P.2d 1062, 1066 (Wyo. 1996) (nothing in reciprocal disciplinary statute required board "to prove the underlying basis" for foreign State's disciplinary action). But see *Becker* v. *DeBuono*, 239 A.D.2d 664 (N.Y. 1997) (where consent order contained no admission of guilt or wrongdoing, and further contained total denial of wrongdoing, collateral estoppel effect not given to consent order); *Urella* v. *State Med. Bd.*, 118 Ohio App. 3d 555, 562 (1997) (where physician appeared and disputed fact of discipline in foreign jurisdiction, arguing that voluntary surrender did not constitute discipline, and that under foreign State's law, agreement not to contest charges was not admission of them, Ohio would not apply reciprocal discipline statute).

By signing the consent order, Ramirez acquiesced to temporary and permanent restrictions on his license to practice medicine in Connecticut; he agreed both not to contest the allegations of misconduct, and that the order would have the same effect before the Connecticut disciplinary authority "as if proven and ordered after a full hearing." In short, he voluntarily placed himself in the same position as a physician against whom

findings had been made. See *Urella* v. *Kentucky Bd. of Med. Licensure,* 939 S.W.2d 869, 872 (Ky. 1997) (voluntary surrender of license "upon the condition that he agree not to contest the charges of misconduct had the same force and effect as if an order had been issued after a hearing"); *Bhuket* v. *State ex rel. Bd. of Registration for the Healing Arts,* 787 S.W.2d 882, 885-886 (Mo. Ct. App. 1990) (consent order providing that it was "in settlement of the allegations contained in the complaint," together with complaint sufficient to support application of reciprocal discipline).

Ramirez does not challenge the authenticity or validity of the consent order, does not contend that he was denied notice or a right to a hearing in Connecticut (or that those proceedings were otherwise unfair), and does not argue that he was not disciplined in Connecticut. In these circumstances, the consent order provides substantial evidence for the board's conclusion that Ramirez was disciplined in Connecticut, and the basis for that discipline. See *Butts* v. *Wyoming State Bd. of Architects, supra* at 1065-1066 (disciplinary board's decision to impose reciprocal discipline supported by substantial evidence where copy of settlement agreement suspending licence in another State was unchallenged).

(b) *Substantial similarity.* We next consider whether the reasons for Ramirez's discipline are "substantially the same" as those for which discipline is authorized in Massachusetts. Ramirez agreed that the factual allegations in the consent order "constitute[d] grounds for disciplinary action pursuant to the General Statutes of Connecticut," in particular, "illegal, incompetent or negligent conduct in the practice of medicine."[1] Massachusetts similarly prohibits physicians from engaging in conduct "which places into question the physician's competence to practice medicine," including gross misconduct and repeated acts of negligence. G. L. c. 112, § 5. 243 Code Mass. Regs.

[1]The consent order also referenced Conn. Gen. Stat. § 20-13(c)(10) (1999) as an "and/or" basis for discipline. That section provides that discipline can be imposed for "failure to provide information requested by the department for purposes of completing a health care provider profile." Given that Conn. Gen. Stat. § 20-13(c)(4) (1999) clearly applies, and the restrictions on Ramirez's license are primarily directed to his conduct with female patients, we do not address the latter section.

§ 1.03 (5) (a) (3) (1994). Certainly, sexual conduct with patients during office visits constitutes gross misconduct in the practice of medicine. *Friedman* v. *Board of Registration in Med.*, 408 Mass. 474, 475 (1990), cert. denied, 498 U.S. 1107 (1991), *S.C.*, 414 Mass. 663 (1993). The language of the consent order is sufficient to establish that the Connecticut disciplinary action was taken on grounds for which discipline is authorized in Massachusetts. See *Bhuket* v. *State ex rel. Bd. of Registration for the Healing Arts, supra* at 886-887.

Finally, we address Ramirez's claims that his license was suspended in Massachusetts without due process of law. To be sure, a physician's due process rights are implicated in an adjudicatory proceeding in which his license could be affected. *Goldstein* v. *Board of Registration of Chiropractors*, 426 Mass. 606, 613 (1998), and cases cited. In this case, Ramirez waived his right to an evidentiary hearing, chose not to contest the allegations against him, and agreed to the imposition of discipline in Connecticut. In Massachusetts, he similarly waived the right to an evidentiary hearing and raised no objection to the proceeding, apart from his contention that the consent order alone cannot provide the basis for discipline. Because application of § 1.03 (5) (a) (12) did not alter Ramirez's "substantive rights by extending in any way the range of conduct for which a physician may be disciplined in Massachusetts," *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 574 (1986), Ramirez was accorded all the due process to which he was entitled.[2]

Ramirez relies on *LePage* v. *Bumila*, 407 Mass. 163 (1990), for the proposition that his consent order in Connecticut was a "settlement" that cannot be used here as the basis for discipline. In that case we held that a decision to pay a traffic citation could not be considered an admission in a subsequent negligence

---

[2]Although Ramirez asserts (without evidentiary basis) that, even if the events occurred as described in the consent order, no discipline was warranted, the board was entitled to conclude that those facts were sufficient to put his competency into question. *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 381 (1985) (board "free to evaluate evidence in light of its own technical expertise, and to draw inferences regarding the legal effect of the conduct at issue"). Moreover, Ramirez chose not to have an evidentiary hearing before the administrative magistrate, and he agreed that those facts constituted a violation of cognate Connecticut statutes.

action. The comparison between consenting to professional discipline and the settlement of civil liability is neither apt nor persuasive. Ramirez agreed that the facts alleged in the consent order violated Connecticut laws, which have clear Massachusetts counterparts. In these circumstances, the board was not required either to try the case, or to ignore the evidence of Ramirez's misconduct. The reciprocal discipline regulation is a rational means "to protect the public health," *Haran* v. *Board of Registration in Med., supra* at 576, quoting *Lawrence* v. *Board of Registration in Med.,* 239 Mass. 424, 428 (1921), a no lesser public policy than encouraging settlement of civil liability.

*Judgment affirmed.*