GARY ANUSAVICE *vs.* BOARD OF REGISTRATION IN DENTISTRY.

Suffolk. March 4, 2008. - July 11, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Board of Registration in Dentistry. Dentist. License.*

This court concluded that the Board of Registration in Dentistry (board) had authority to impose reciprocal discipline on a dentist licensed to practice dentistry in the Commonwealth based on discipline imposed on him in a foreign jurisdiction, where the board's policy, adopted through adjudication, did not suffer from a constitutional defect, was not contrary to the language of its enabling statute, and was rationally related to furthering the board's purpose to safeguard the public health and welfare [793-796]; further, this court concluded that the board properly determined that a consent order between the dentist and the Rhode Island Board of Examiners in Dentistry constituted discipline for purposes of reciprocal discipline in the Commonwealth [796-798]; however, this court declined to determine the preclusive effect of the allegations of misconduct set forth in that consent order, where the imposition of discipline, not proof of misconduct, was the relevant inquiry in imposing reciprocal discipline [798-801].

The Board of Registration in Dentistry (board) did not abuse its discretion in revoking the license of a dentist to practice dentistry in Massachusetts, where the extent of the discipline was based not only on a lower level of discipline imposed on the dentist in Rhode Island, but also on his history of discipline and regulatory noncompliance in Massachusetts, as well as his criminal misconduct. [801-802]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 20, 2006.

The case was reported by *Spina*, J.

*Thomas F. McGuire, Jr.*, for the plaintiff.

*Sookyoung Shin*, Assistant Attorney General, for the defendant.

CORDY, J. This is an action for judicial review of a final decision and order of the Board of Registration in Dentistry (board) revoking Gary Anusavice's license to practice dentistry in Massachusetts. It is brought pursuant to G. L. c. 112, § 64, and G. L. c. 30A, § 14 (7), and was filed in the Supreme Judicial Court for Suffolk County. The single justice reserved and reported three questions:

"1. Does the Board of Registration in Dentistry have authority to impose (reciprocal) discipline on a dentist licensed to practice dentistry in the Commonwealth based on discipline imposed on him in a foreign jurisdiction?

"2. Does the consent order between the petitioner and the Rhode Island Board of Examiners in Dentistry, dated November 9, 2005, constitute discipline for purposes of reciprocal discipline in the Commonwealth?

"3. Does the aforesaid consent order have preclusive effect as to the misconduct described therein for purposes of reciprocal discipline in the Commonwealth?"

As explained below, we answer the first two questions in the affirmative. We decline to answer the third question as posed by the single justice, where Anusavice has not been charged in Massachusetts with the misconduct that was alleged in Rhode Island and resolved by the consent order. In the circumstances of this case, proof of that misconduct is not relevant to the imposition of reciprocal discipline in Massachusetts. We also proceed to affirm the sanction imposed by the board.

1. *Background.* On June 23, 1980, the board issued Anusavice a license to practice dentistry. In July, 1997, Anusavice entered a consent agreement with the board, resolving twenty-four complaints that had been filed against him.[1] Under the terms of that agreement, Anusavice voluntarily surrendered his license for five years; he also agreed to a five-year period of probation on the reinstatement of his license. The agreement required Anusavice to "comply with all federal and state laws" and to "observe currently accepted standards of practice" in dentistry. His Massachusetts license was reinstated in 2002, and he began practicing under the terms of his probation.[2]

a. *The Rhode Island consent order.* At all relevant times,

---

[1] The record does not include a description of each of these complaints, but they are referred to as, "among other things . . . defrauding insurance companies."

[2] In 1999, two years after entering the Massachusetts consent order, Gary Anusavice pleaded guilty in the United States District Court for the District of Massachusetts to filing a false income tax return. The tax year at issue was 1993, which preceded the consent decree, and therefore the conduct did not itself constitute a violation of its terms.

Anusavice was also licensed to practice dentistry in Rhode Island. On November 9, 2005, Anusavice entered into a consent order with the Rhode Island Department of Health Board of Examiners in Dentistry (Rhode Island department), resolving complaints that had been made against him in that State. This is the consent order at issue in the present case. Among its findings of fact, the consent order included the following description of the allegations of misconduct it was resolving:

> "The Department has alleged that the Respondent . . . has engaged in activities amounting to fraud, including but not limited to providing unwanted dental services to patients, credit card fraud, a bait and switch scheme with regard to dental services, billing patients for services not delivered, deceiving patients with respect to credit that respondent arranged for them, refusing to respond to patients' repeated requests for care, refusing to provide patients with copies of their medical records, and other activities prohibited by statute."

The order further provided that Anusavice "neither admits nor denies the . . . allegations," but "acknowledges and waives" his right to contest them at a hearing before the Rhode Island department.[3] In exchange for the Rhode Island department terminating its disciplinary proceeding against him, Anusavice agreed to refrain from practicing dentistry in Rhode Island for eighteen months, and, on resuming his practice, to be subject to an additional eighteen-month period of probation. During this period of probation, Anusavice would be required to, among other things, submit "quarterly reports detailing the conduct of his practice, number of patients and the names of other licensed professionals employed there." The order further provided that Anusavice would be eligible for "an unrestricted license to practice as a dentist" only if he successfully completed the probationary period.

[3]Specifically, Anusavice waived his rights "to appear personally or by counsel or both before the [Rhode Island Department of Health Board of Examiners in Dentistry (Rhode Island department)]"; "to produce witnesses and present evidence in his behalf at a hearing"; "to cross-examine witnesses"; "to have subpoenas issued by the [Rhode Island department]"; "to further procedural steps except for those specifically contained herein"; and to appeal from the consent order.

The Rhode Island department reported the consent order to the National Practitioner's Data Bank and the Healthcare Integrity Data Base (data banks). These data banks exist to "restrict the ability of incompetent [health care professionals] to move from State to State without disclosure or discovery of the [professional's] previous damaging or incompetent performance." 42 U.S.C. § 11101(2) (2000). The Rhode Island department also listed Anusavice's "[Eighteen] Months Voluntary Surrender [of his license] with [Eighteen] Months Probation upon reinstatement" as a "disciplinary action" on its official Internet Web site.

b. *Massachusetts proceedings.* Following the entry of the consent order in Rhode Island, the board issued an order requiring Anusavice to show cause why it should not take action against his license in Massachusetts. The order to show cause recited the history of the Rhode Island disciplinary proceeding and contended that Anusavice was subject to reciprocal discipline because the "voluntary surrender of [his] license is a disciplinary action . . . and it has been reported to the [data banks] as such."[4] It further alleged that Anusavice had (in Massachusetts) advertised dental services in the Verizon Yellow Pages in 2003 and 2004 without naming the dentist who owned the practice, in violation of 234 Code Mass. Regs. § 2.05(3)(a) (1995).[5]

The parties filed cross motions for summary decision as permitted by 801 Code Mass. Regs. § 1.01(7)(h) (1998). Prosecuting counsel for the board argued that there was no genuine issue of

[4]Specifically, the order to show cause alleged: "On or about November 9, 2005, you were licensed to practice as a Dentist in both Massachusetts and the state of Rhode Island. . . . On or about November 9, 2005, you entered into a Consent Order with the [Rhode Island department] to resolve a complaint that alleged . . . that you engaged in activities amounting to fraud . . . . Pursuant to the Consent Order, you voluntarily surrendered your license to practice dentistry in Rhode Island for eighteen (18) months . . . . You also agreed to numerous other restrictions on your Rhode Island dentistry license, including that your license will be subject to a probation period . . . . The voluntary surrender of your license is a disciplinary action . . . and it has been reported" as such.

[5]Title 234 Code Mass. Regs. § 2.05(3)(a) (1995) provides in relevant part that "[a]ny advertisement for dental services must contain the name of the dentist who owns the practice." The order to show cause also contained a number of other allegations, two of which were dismissed by the board, and one withdrawn by the prosecuting counsel.

material fact in dispute that Anusavice had improperly advertised dental services in Massachusetts, and had been disciplined in Rhode Island based on complaints that he engaged in fraud. The prosecuting counsel further argued that because fraud in the practice of dentistry is a basis on which discipline could be imposed in Massachusetts, Anusavice was subject to reciprocal discipline in Massachusetts. In support of the motion for summary judgment, prosecuting counsel submitted a copy of the Rhode Island consent order, as well as an affidavit from Gail Giuliano, the administrator of the Rhode Island department.[6]

Anusavice opposed the motion for summary decision, contending first that "there is no statute or regulation giving the Board authority to automatically impose discipline based on the Rhode Island Consent Order"; and second that "the imposition of discipline by the Board requires either an admission of wrongdoing . . . or a finding by a board — whether in Massachusetts or Rhode Island — that he has engaged in some wrongdoing. Neither is present here."

Anusavice also submitted affidavits explaining the circumstances leading to his signing of the consent order. Relying on these affidavits, he argued that the allegations of fraudulent conduct were untrue, and that he agreed to the consent order because false charges were being disseminated in the media, causing anxiety to his wife and sons, and harming his reputation. He claimed that he insisted on the consent order omitting any admission or finding of wrongdoing, in part, because he did not want that order to be used against him in other proceedings. Anusavice did not dispute the advertising charge, but contended that it was inadvertent error that was subsequently corrected.

c. *The Massachusetts board's decisions.* 1. *Partial summary*

---

[6]The affidavit stated that the "Findings of Fact in the Consent Order constitute unprofessional conduct" and that the "surrender of [Anusavice's] license and the period of probation . . . constitute disciplinary actions." Gail Giuliano subsequently submitted an amended affidavit (after discussions with the department's legal counsel), which omitted the assertions that the "Findings of Fact . . . constitute unprofessional conduct" and that the license surrender and probation "constitut[ed] disciplinary action." The amended affidavit, however, explained that the consent order had been reported to the data banks, and that the Rhode Island department's official Web site lists all current disciplinary actions. Ultimately, the board determined not to base any of its findings on Giuliano's characterizations of the Rhode Island proceedings.

*decision.* On March 6, 2006, the board granted the prosecuting counsel's motion for summary decision as to the claim that Anusavice was subject to reciprocal discipline, and that he had improperly advertised his dental practice. The latter matter is not disputed.

In its ruling on the motion for summary decision, the board determined that the Rhode Island consent order constituted discipline, and held that Anusavice was subject to reciprocal discipline as a result, regardless of whether he had admitted to or been found to have engaged in wrongdoing. In reaching the latter conclusion, the board relied principally on *Ramirez* v. *Board of Registration in Med.*, 441 Mass. 479, 482 (2004) (*Ramirez*), in which this court held that reciprocal discipline (of a physician) may be imposed in Massachusetts when a licensee has been disciplined in another jurisdiction, whether based on contested proceedings where misconduct is found or admitted, or on a consent order where it is not, provided that the grounds for discipline are substantially the same as would subject the physician to discipline in the Commonwealth.

In assessing whether the conduct alleged in the Rhode Island consent order presented grounds that would be sufficient for discipline in Massachusetts, the board concluded that it was, both in light of G. L. c. 112, § 61, which provides for discipline "if it appears to [the] board that the holder of such . . . license . . . is guilty of deceit, malpractice, gross misconduct in the practice of his profession, or of any offense against the laws of the commonwealth relating thereto," and in light of the terms of his probation under the 1997 consent order between Anusavice and the board. The board further concluded that the conduct alleged was the "type of conduct that undermines the public confidence in the integrity of the profession." Cf. *Sugarman* v. *Board of Registration in Med.*, 422 Mass. 338, 342 (1996); *Raymond* v. *Board of Registration in Med.*, 387 Mass. 708, 713 (1982) (boards have authority to protect image of profession and discipline licensees for conduct that undermines public's confidence in integrity of profession, as reasonably related to promotion of public health, welfare, and safety).[7]

---

[7]The board also concluded that the allegations would have demonstrated

2. *Motion for reconsideration.* Anusavice moved for reconsideration, arguing that the board mischaracterized the Rhode Island consent order as discipline,[8] and claiming that, under the doctrines of collateral estoppel or issue preclusion, the board cannot impose reciprocal discipline based on the Rhode Island consent order, as the allegations resolved by that order were never adjudicated on the merits.

In denying the motion, the board affirmed its conclusion that the restrictions placed on Anusavice's license, pursuant to the Rhode Island consent order, constituted discipline. It reached this conclusion based on the undisputed contents of "the Consent Order, the restrictions placed on [Anusavice's] license pursuant to that Consent Order . . . [the Rhode Island department's] subsequent report of its action to the Data Banks," and on the definition of "disciplinary action" in 234 Code Mass. Regs. § 2.01(11)(a) (1995). The board also noted that the Rhode Island department had reported the order as discipline on its official Web site, reflecting "sanctions" on Anusavice's license.[9] With respect to the imposition of discipline on the basis of a consent order without an adjudication or admission to the underlying conduct, the board concluded that it could do so as a matter of law where discipline had in fact been imposed by the Rhode Island department.

3. *Final decision and order.* On June 22, 2006, the board issued its final decision. It explained that the role of the various

---

Anusavice's failure to fulfil the requirement of "good moral character" for ongoing licensure as a dentist, in violation of G. L. c. 112, § 45, and 234 Code Mass. Regs. § 2.01(20)(a)(2) (1995).

[8]Among other things, Anusavice contended that the board had relied on the first affidavit from Giuliano, see note 6, *supra,* which had been superseded by her second affidavit. The board responded that while it had considered both affidavits, it did not base any of its rulings and findings on them.

[9]Following its denial of the motion for reconsideration, the board held a hearing to determine the appropriate sanction. See *Veksler* v. *Board of Registration in Dentistry,* 429 Mass. 650 (1999). Anusavice did not testify at this hearing, but sought to admit as mitigating evidence an affidavit with attachments claiming that the Rhode Island charges were untrue. The board refused to consider the affidavit, ruling that the affidavit was not acceptable in lieu of "in-person testimony," and that it lacked jurisdiction to inquire into or make findings related to the underlying issues that led Rhode Island to discipline his Rhode Island license. The question of the board's jurisdiction to conduct such an inquiry is not before us.

Commonwealth boards of registration is to regulate the practices of the professions to promote the public health, welfare, and safety, and that it had considerable latitude and discretion in determining appropriate sanctions to best protect the public. The board concluded that the "seriousness of [Dr. Anusavice's] conduct in Rhode Island [was] specifically detailed and evident" in the consent order, and that "further inquiry . . . into the specifics of each case before the [Rhode Island department] was neither legally cognizable nor necessary." After taking into account what it termed an "egregious pattern of dishonesty" (including the conduct leading to the 1997 Massachusetts consent order), and "an inability to adhere to the rules and regulations that govern his profession as well as an inability to adhere to the laws of the Commonwealth and the federal government" (including his admitted improper advertising in Massachusetts and his 1999 Federal conviction for filing a false tax return), the board ordered that Anusavice's license be revoked.

4. *Discussion.* a. *Does the board have authority to impose reciprocal discipline on a dentist licensed to practice in the Commonwealth based on discipline imposed in a foreign jurisdiction?* The role of the board in the over-all statutory scheme is to take primary responsibility in the regulation of the practice of dentistry in order to promote the public health, welfare, and safety. Cf. *Kvitka* v. *Board of Registration in Med.*, 407 Mass. 140, 143, cert. denied, 498 U.S. 823 (1990); *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 524 (1979) (same for regulation of practice of medicine). There is no question that the board has the statutory authority to suspend, cancel, or revoke a dentist's license to practice if it appears that the license holder has engaged in professional misconduct, G. L. c. 112, § 61[10]; see

[10]General Laws c. 112, § 61, provides in part: "[T]he board of registration in medicine[,] each board of registration or examination in the department of public health in the executive office of health and human services and, each board of registration or examination in the division of professional licensure . . . after a hearing, may, by a majority vote of the whole board, suspend, revoke or cancel any certificate, registration, license or authority issued by it, if it appears to said board that the holder of such certificate, registration, license or authority, is incapacitated by reason of mental illness, or is guilty of deceit, malpractice, gross misconduct in the practice of his profession, or of any offense against the laws of the commonwealth relating thereto."

G. L. c. 112, § 52E[11]; or in conduct that undermines the integrity of the profession. *Raymond* v. *Board of Registration in Med.,* 387 Mass. 708, 713 (1982). In effectuating its primary responsibility, the board is empowered to make "such rules and regulations as it deems necessary," to carry out its disciplinary responsibilities. G. L. c. 112, § 43, and is vested with wide-ranging discretion to use that power to fashion remedies, set enforcement strategies, and to determine whether the public interest requires the revocation of a dentist's license. *Levy* v. *Board of Registration & Discipline in Med., supra* at 524-528.

In carrying out its statutory charge, the board may exercise its authority by formal rule making, or may adopt policies by adjudication. See *Hastings* v. *Commissioner of Correction,* 424 Mass. 46, 49 (1997), quoting *Arthurs* v. *Board of Registration in Med.,* 383 Mass. 299, 312-313 (1981) ("It is a recognized principle of administrative law that an agency may adopt policies through adjudication as well as through rulemaking, . . . and the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency"); *Raymond* v. *Board of Registration in Med., supra.* Some professional licensing boards have specific statutory authority to impose reciprocal discipline based on discipline imposed in other jurisdictions, see, e.g., G. L. c. 112, § 61, second par. (boards of registration under division of professional licensure).[12] Others have promulgated regulations to the same effect. See 243 Code Mass. Regs. § 1.03(5)(a)(12) (1993)

---

[11]General Laws c. 112, § 52E, provides in part: "The board, after due notice and hearing, may suspend, revoke, cancel or reprimand the holder of any certificate, registration, license or authority issued by it, of any dentist whom it finds has engaged in repeated irregularities in billing an insurance company or other third party payer for services rendered to a patient."

[12]"A board of registration under the supervision of the division of professional licensure may discipline the holder of a license, certificate, registration or authority . . . if it is determined, after a consent agreement between the parties or after an opportunity for an adjudicatory proceeding . . . that such holder has: . . . (7) had a license, certificate, registration or authority issued by another state or territory of the United States, the District of Columbia, or a foreign state or nation with authority to issue such a license, certificate, registration or authority revoked, cancelled, suspended, not renewed or otherwise acted against, or if the holder has been disciplined, if the basis for the action would constitute a basis for disciplinary action in the commonwealth." G. L. c. 112, § 61, second par. (7).

(Board of Registration in Medicine).[13] Here, the board has chosen to adopt such a policy by adjudication. It has articulated this policy in prior decisions as well. See Matter of Thompson, Board of Registration in Dentistry No. DN-98-080 (Oct. 26, 1999) (final decision) (reciprocal discipline imposed based on discipline imposed by California board of dental examiners and Washington's dental quality assurance commission); Matter of Bliss, Board of Registration in Dentistry No. DN-95-394 (Jan. 30, 1996) (final decision and order) (board indefinitely suspended license based on Rhode Island suspension order).

Where the board's policy (or regulation) does not suffer from a constitutional defect, is not contrary to the language of its enabling statute, and is rationally related to furthering the board's purpose to safeguard the public health and welfare, it will be upheld. See *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 358 (1988). See also *Duarte* v. *Commissioner of Revenue, ante* 399, 407-408 (2008). We conclude that the imposition of reciprocal discipline based on the fact of discipline in another jurisdiction is a rational means for the board to protect the public health and welfare, is broadly available to other similarly charged agencies, and does not suffer from any constitutional defect or statutory bar.

Anusavice does not dispute that in some contexts the board can impose reciprocal discipline. Rather, he contends that the board cannot impose it based on the fact of discipline in another jurisdiction, unless there has been a final adjudication on the merits of (or admission of guilt to) the allegations on which that discipline is based. We disagree. Where, as here, charges of serious professional misconduct have been brought before the licensing board of a foreign jurisdiction, and the professional is afforded the full opportunity to challenge the truth of those allegations but has chosen to waive that opportunity, and to resolve the complaints by agreeing to discipline, we see no need for the

[13]Title 243 Code Mass. Regs. § 1.03(5)(a)(12) (1993) provides: "A complaint against a physician must allege that a licensee is practicing medicine in violation of law, regulations, or good and accepted medical practice and may be founded on any of the following: . . . 12. Having been disciplined in another jurisdiction in any way by the proper licensing authority for reasons substantially the same as those set forth in G. L. c. 112, § 5, or 243 [Code Mass. Regs. §] 1.03(5) . . . ."

Massachusetts board to take on the burden of conducting an out-of-State investigation, and attempting to prove those allegations in order to impose reciprocal discipline. *Ramirez, supra* at 482. In deciding *Ramirez,* we noted with approval decisions of other jurisdictions to the same effect. See, e.g., *Marek* v. *Board of Podiatric Med.,* 16 Cal. App. 4th 1089 (1993) (*Marek*) ("limiting the application of [the reciprocal discipline statute] to situations where the licensees admit culpability or where misconduct is proven in the foreign jurisdiction would make [the State] a safe haven for medical practitioners who, in the face of charges of unprofessional conduct enter into consent decrees in other jurisdictions without making any admissions, leave that other jurisdiction, establish medical practices in [this State] and thus avoid review of their medical practices by any licensing agency"); *Butts* v. *State Bd. of Architects,* 911 P.2d 1062, 1066 (Wyo. 1996) (reciprocal discipline appropriately imposed based on settlement agreement in foreign jurisdiction; nothing required board "to prove the underlying basis" for foreign discipline). See also *Bhuket* v. *State ex rel. Bd. of Registration for the Healing Arts,* 787 S.W.2d 882, 885-886 (Mo. Ct. App. 1990) (consent order providing that it was in settlement of allegations contained in complaint together with copy of complaint sufficient to support application of reciprocal discipline). We answer the first reported question in the affirmative.

b. *Does the Rhode Island consent order constitute discipline for purposes of reciprocal discipline in the Commonwealth?* Whether the terms of the consent order constitute discipline for Massachusetts reciprocal discipline purposes is a question of law. Anusavice does not dispute either that the consent order was entered or its terms, nor does he challenge its validity or contend that the Rhode Island proceedings were unfair. He merely argues that it was not discipline. The board properly determined that it was.

On its face, the consent order requires Anusavice to refrain from practicing dentistry in Rhode Island for eighteen months, which is to be followed by an eighteen-month period of practice under terms of probation. He is eligible for an unrestricted license *only* if he complies with the laws and regulations governing his probation and with the requirements of the consent order. There

is no question that these restrictions on Anusavice's license constitute discipline under the board's regulations. Title 234 Code Mass. Regs. § 2.01(11)(a) defines "[d]isciplinary action" as including "probation," "restriction," and "denial/restriction of privileges." Cf. *Bhuket* v. *State ex rel. Bd. of Registration for the Healing Arts, supra* at 885 ("disciplinary action" includes any restriction or limitation on license or licensee).

The board appropriately relied on the terms of the consent order as well as on the Rhode Island department's report of that order to the data banks and on its disciplinary Web site, in reaching its conclusion. Cf. *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 381 (1985) (board free to evaluate evidence in light of its own technical expertise, and to draw inferences regarding legal effect). Anusavice was no less "disciplined" in Rhode Island because he agreed to these sanctions in a consent order, rather than having them imposed after a disciplinary hearing.[14] Once executed and approved, the consent order became binding on the parties to it, and terminated the administrative proceeding. See *Richmond* v. *Department of Envt'l Mgt.*, 941 A.2d 151, 157 (R.I. 2008) (administrative agency consent agreement "effective and binding on the parties to that agreement"). Anusavice argues that he did not view the consent order as discipline, and that the Rhode Island department did not either, based on Giuliano's second affidavit. In that affidavit, Giuliano did not aver that the terms of the order were not considered to be discipline; rather, she declined to characterize them, as she had done in her first affidavit. See note 6, *supra*. The board concluded, and we agree, that the Rhode Island department's own reporting of the order as discipline to the data banks and on its Web site undercuts Anusavice's argument. Regardless, neither Anusavice's intention nor expectation that the order would not constitute discipline is determinative of whether the board properly can view its terms as discipline for reciprocal discipline purposes. See *Torres* v. *Commissioner of Correction*, 427 Mass. 611, 614 (1998) (opinion regarding purely legal determination entitled to little weight).

---

[14]If Anusavice fails to comply with the terms of the consent order, the order provided that the department may proceed to impose a "suspension" or "other appropriate" discipline.

Anusavice also argues that policy reasons support construing settlements distinctly from discipline, as conflating them could discourage settlements. The court in *Ramirez, supra* at 486, considered the impact on settlements of imposing reciprocal discipline based on consent orders, and concluded that reciprocal discipline is a rational means of protecting public health, and that protection of public health is no lesser a public policy than encouraging settlements, noting that the "comparison between consenting to professional discipline and the settlement of civil liability is neither apt nor persuasive." *Id.*[15] The board properly acted within its discretion and expertise in concluding that the consent order constituted discipline for purposes of regulating the profession of dentistry in Massachusetts.

We answer the second reported question in the affirmative.

c. *Does the aforesaid consent order have preclusive effect as to the misconduct described therein for purposes of reciprocal discipline in the Commonwealth?* Having concluded that the board had authority to impose reciprocal discipline based on the fact of foreign discipline, and that it permissibly characterized the Rhode Island consent order as such, we turn to the question of the preclusive effect, if any, of the allegations of misconduct set forth in the body of the order. In the circumstances of this case, the rules of issue preclusion do not readily apply, as the disciplinary action brought before the board in Massachusetts was based not on the conduct underlying the Rhode Island order, but on the fact of discipline in Rhode Island.[16] To the extent that the underlying conduct alleged in (and resolved by) the consent

---

[15]Anusavice also argues that the order distinguishes between a voluntary agreement and discipline, because it states that if he does not comply with the order, "his license as a dentist shall be subject to suspension or other appropriate disciplinary actions." He emphasizes that probation does not necessarily mean discipline, arguing that the use of voluntary probation without adjudication is "well known." He contends that nothing prevented the Rhode Island department from reporting a settlement, rather than discipline. We are not persuaded by these arguments.

[16]Issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies. *Kobrin* v. *Board of Registration in Med.*, 444 Mass. 837, 843 (2005). Before precluding a party from relitigating an issue, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and

order is relevant, it is relevant only to the question whether the reasons for Anusavice's discipline in Rhode Island are " 'substantially the same' as those for which discipline is authorized in Massachusetts." *Ramirez, supra* at 484. As noted previously, fraud in the practice of dentistry is a ground on which discipline is authorized in Massachusetts. "The language of the consent order is sufficient to establish that the [Rhode Island] disciplinary action was taken on grounds for which discipline is authorized in Massachusetts." *Id.* at 485.

To permit Anusavice to contest the veracity of those grounds before the board (something he explicitly declined to do in Rhode Island) on the limited question whether they are " 'substantially the same' as those for which discipline is authorized in Massachusetts," *id.* at 484, would essentially burden the board "with the physical and financial task of investigating allegations of misconduct by its licensees in foreign jurisdictions and then bringing witnesses and evidence to this [S]tate to prove its case at an administrative hearing." *Id.* at 482-483, quoting *Marek, supra* at 1098. Such a result would be directly contrary to the reasoning the court adopted in *Ramirez,* when it affirmed the imposition of reciprocal discipline based on discipline imposed by consent in a foreign jurisdiction, even in the absence of a finding or admission of wrongdoing in that jurisdiction. *Ramirez, supra* at 482. Consequently, we conclude that the board could properly base reciprocal discipline on the fact of discipline in Rhode Island, without permitting Anusavice to contest the allegations that were resolved by the consent order. Those allegations are not treated as preclusive findings of misconduct for the purpose of imposing discipline, but, as noted above, are considered only in determining whether similar allegations would subject the dentist to discipline in Massachusetts.

---

(3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Id.,* quoting *Tuper* v. *North Adams Ambulance Serv., Inc.,* 428 Mass. 132, 134 (1998). The issue must have been essential to the earlier judgment. *Kobrin* v. *Board of Registration in Med., supra* at 844. The Restatement (Second) of Judgments § 27 comment e (1982) discusses consent agreements in the context of issue preclusion, and asserts that in consent agreements, none of the issues is actually litigated. It provides that consented-to judgments may be conclusive with respect to issues if the parties entered the agreement manifesting such an intention. *Id. Turner* v. *Community Homeowner's Ass'n,* 62 Mass. App. Ct. 319, 327 (2004).

Anusavice attempts to distinguish *Ramirez*, highlighting that the consent order in that case, while providing that the doctor admitted no guilt with respect to the allegations, stated that the allegations "shall be deemed true in any subsequent proceeding before the [Connecticut] Board in which his compliance with this Consent Order" or with Connecticut statutes was at issue, and that they would have the same effect in any future proceeding before the Connecticut board "as if proven and ordered after a full hearing." *Id.* at 480. Consequently, he contends that while the court in *Ramirez* did not base its conclusion on the principles of issue preclusion, in fact the decision was appropriately grounded on such principles where both parties specified that they intended the consent order to have the effect of the allegations being proved.[17] Therefore, insofar as the Rhode Island consent order did not include the specific language of the consent order in the *Ramirez* case, it cannot be used as the basis of reciprocal discipline in Massachusetts, and the board must proceed to adjudicate the underlying conduct in order to impose any discipline. We disagree.

Whether a consent order providing for discipline can be used as a basis for reciprocal discipline does not turn so heavily on this specific language.[18] The principal cases on which *Ramirez* relied make no mention of such language. See *Marek, supra* at 1093 (consent decree stated that while doctors did not admit to allegations, they chose not to contest them and agreed to discipline in resolution of charges); *Butts* v. *State Bd. of Architects*, 911 P.2d 1062, 1064 (Wyo. 1996) (settlement agreement provided

---

[17]However, under neither the Rhode Island nor the Connecticut order is there an expression of intent that the allegations would be "deemed true" in any other context, including in reciprocal disciplinary proceedings brought by other jurisdictions.

[18]The Rhode Island consent order, while worded differently, is much to the same effect. The allegations of misconduct resolved by the consent order are set forth in that order, as is Anusavice's waiver of his right to a hearing before the Rhode Island department to contest those allegations. The order further provides that if Anusavice fails to comply with the terms of suspension and probation agreed to under the order, the Rhode Island department may proceed to suspend his license or impose other appropriate discipline. Consequently, for practical purposes, in any subsequent proceeding in Rhode Island involving Anusavice's failure to comply with the consent order, his noncompliance (and consequent discipline) could not be defended on the ground that the allegations were untrue or unproven.

that licensee did not admit truthfulness of allegations but agreed to suspension of license).

As the court in *Marek* explained (contrary to the petitioners' assertion in that action), the reciprocal discipline imposed on doctors by the California board did not rely on collateral estoppel or issue preclusion. "[T]he merits of the charges in the foreign jurisdiction [Nevada] were not in issue," and the discipline imposed in California was not based on admissions or findings of wrongdoing in Nevada, but on the fact of discipline in Nevada. *Id.* at 1097. *Marek* further distinguished cases in which issue preclusion applied, and deemed those cases inapposite. *Id.* at 1099. For example, the court distinguished *Halyalkar* v. *Regents of N.Y.*, 72 N.Y.2d 261 (1988), which held that a New York board had improperly invoked collateral estoppel to give preclusive effect to a consent order in an earlier administrative proceeding in New Jersey. In that case, unlike in *Marek*, or the case here, the licensee was *not* charged in New York with having been disciplined in another jurisdiction, but rather was charged with the same underlying misconduct that had been at issue in New Jersey. Thus, issue preclusion principles applied and the New York court proceeded to analyze their application accordingly. We agree with this reasoning.

Consequently, we decline to answer the question whether the consent order has preclusive effect as to the misconduct described therein, where the imposition of discipline, not proof of misconduct, is the relevant inquiry in imposing reciprocal discipline.

5. *Sanction.* We hold that the board has the authority to impose reciprocal discipline in this case, and in the absence of other material issues pending before the single justice, we proceed to consider the discipline imposed by the board. The board revoked Anusavice's license to practice dentistry in Massachusetts, a level of discipline substantially greater than that imposed in Rhode Island. While in other circumstances this disparity might raise a concern, it does not do so here because the extent of the discipline was based not only the discipline imposed in Rhode Island, but also on Anusavice's history of discipline and regulatory noncompliance in Massachusetts, as well as his criminal misconduct.

The board has broad latitude in shaping appropriate sanctions

in each case, and we defer to the board's expertise in making those determinations. *Birudavol* v. *Board of Registration in Med.*, 448 Mass. 1031, 1033 (2007), quoting *Sugarman* v. *Board of Registration in Med.*, 422 Mass. 338, 347 (1996). We review the sanction imposed for abuse of discretion. *Kvitka* v. *Board of Registration in Med.*, 407 Mass. 140, 143 (1990). Here, we find no abuse of discretion. The decision was accompanied by a statement of reasons. Those reasons were supported by substantial evidence, and "the petitioner has not demonstrated any 'extraordinary . . . circumstances' that would justify our interference in the board's exercise of its discretion in terms of the sanction." *Kobrin* v. *Board of Registration in Med.*, 444 Mass. 837, 850 (2005), quoting *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 687 (2005).

6. *Conclusion.* The matter is remanded to the single justice for further proceedings consistent with this opinion.

*So ordered.*